# UNITED STATES DISTRICT COURT
## OF NEW JERSEY

JESSICA BERK,

                    Plaintiff,

v.

RITZ CARLTON CONDOMINIUM
ASSOCIATION, &
STANLEY MARAGOUNDAKIS

                    Defendants.

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

2023 APR 28  A 11: 06
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
CLERK

## NATURE OF THE COMPLAINT

1.     This is an action for declaratory judgment, permanent injunctive relief, damages, and costs, alleging a continuing pattern of disabled harassment  and senior abuse conduct in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-19 ("FHA"),

2.     Plaintiff Jessica Berk, a noted New York Times *West Village* community activist for Residents In Distress (R.I.D.), Christopher $treet Partnership, FaggotsFightBack, and now KarmaLovesKickAss LLC, etc. Plaintiff has dedicated her life to protecting the rights of seniors, minorities, LGBTQ, transgender, and especially the disabled. Her family is survivors of the Holocaust, she is proudly Jewish, visibly and physically disabled, and also asserts causes of action for Breach of Contract, New Jersey Fraud N.J.S.A. 2A:14-1[1], and infliction of emotional distress.

---

[1] In New Jersey, the elements of **common-law fraud** are: " (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v.

3.      After a lifetime of activism in New York's West Village which included unbelievable intimidation for helping organize among other things, the NYC Gay Parade for a dozen or more years and even leading that parade when homosexuality was illegal, Mrs. Berk left New York.

4.      In January 2019, *Plaintiff*, Jessica Berk bought and moved into an apartment in the Atlantic City Ritz Carlton building, part of the Ritz Carlton Condominium Association, a quiet residential complex located in Atlantic City, New Jersey.  Throughout 2019 to 2023, Mrs. Berk *did not* enjoy a peaceful new neighborhood and bucolic surroundings even though she loves Atlantic City and its residents.

5.      From the beginning, a resident of the Ritz Carlton building, Stanley Maragoudakis, defendant, 64, frequently yelled vulgar discriminatory language against the disabled, LGBTQ, and commented negative religious, anti-Jews epithets. He attacks seniors and disabled people in the apartment building and on the Boardwalk by the building to passers-by. It is common knowledge that Mr. Maragoudakis does this. Plaintiff is a common victim of this activity  (Please see attachment A, photo of Mrs. Berk leading the Gay Parade in New York City).

6.      Mr. Maragoudakis has made death threats against the plaintiff, which are well documented by a pile of police reports and building complaints.

7.      Mr. Maragoudakis is a 6'2'' well built intimidating man who has no disabilities.

8.    Plaintiff is disabled and a member of a protected class  Plaintiff is visibly fragile, walks with a cane or wheelchair for support, and has an emotional support animal after her service dog of 12 years died. Plaintiff suffers from blackouts and passes out randomly due to a neurological condition that manifests itself in fear, intimidation, lack of food, a feeling of confinement, because of intense stress, etc. More, the plaintiff has a permanent leg wound, and can not hold or carry anything over seven and a half pounds. She has problems grasping at things such as doors or using cards (Please see attachment at B, fully favorable social security decision and a photo of Jessica Berk passing out in front of the Ritz Carlton with Ofcie manager Randell).

9.    Mr. Maragoudakis made repeated death threats against Mrs. Berk and her service dog.

10.    Others in the building have made death threats about her service animal and repeatedly insulted her on her disability, ecurity did not open the door for her when could not open it due to her disability and mocked her repeatedly for it.

11.    Defendant did nothing.

12.    The plaintiff has had to file multiple police reports in the Atlantic City Police Department but due to the Ritz Carlton Condominium Association not acting, or revealing where Mr. Maragoudakis lived so the authorities would handle it,  the police could do nothing and are repeatedly frustrated.

13.    The defendant **is** harboring Mr. Maragoudakis and not giving him any violations under FHA for years before when the plaintiff moved into the building.

14.    The plaintiff suffered immeasurable harm due to that failure.

15.     In March of 2022, Mr. Maragoudakis's tenant and next-door neighbor, Raymond Apponte, approached each other somehow near the front door of the Tropicana Casino on the Boardwalk. Then Mr. Aponte stabbed Mr. Maragoudakis 22 times in the back, for what is widely considered to be years of mental abuse against women, seniors, gays, religious, Jews, and the disabled. This was expressed to a private investigator and in open court and is well documented. The court hearing explained that the entire community wrote of Mr. Maragoudakis's criminal behavior which included filing death threats.

16.     Mr. Maragoudakis upon exiting the hospital in a fit of rage came close to Plaintiff on the street and treated to kill her yet *again* in an unprovoked in-your-face harassment.

17.     It is widely known that Mr. Maragoudakis also spat on a quadriplegic security guard in the Tropicana who is also a tenant of the Ritz Carlton.

18.     This attack was just one of a salvo of continuous series of verbal, physical and assaults and violent threats, and disabled epithets that persisted for more than 62 months: From the time plaintiff moved into the Ritz Carlton,

19.     Jessica Berk was subjected to Mr. Maragoudaki's egregious harassment, including the repeated use of disabled anti-jewish slurs and threats to Mrs. Berk's physical safety while the Ritz Carlton Condominium Association failed to investigate Mrs. Berk's complaints concerning Mr. Maragoudaki's violent disabled Anti-Jewish harassment and concomitant failure to intervene on Mrs. Berk's behalf violated her rights under the FHA and other civil rights statutes by creating a hostile living environment and interfering with her right to peaceful enjoyment of his home. The FHA and other civil rights statutes prohibit a landlord from tolerating and/or facilitating disabled harassment by a neighboring tenant. Specifically, the FHA and the 1866 Civil Rights Act require a landlord to take reasonable steps to investigate allegations of disabled harassment or any other protected class by a neighboring tenant once notified, as it would be a violation of a deed/lease

term.

20.    The Ritz Carlton took no steps to investigate clear evidence of disabled harassment or protect Mrs. Berk even after it was established that Mr. Maragoudakis broke the law, let alone the terms of his deed/lease. The Ritz Carlton Condominium Association could, for example, have terminated Mr. Maragoudakis's lease or evicted him, or told the Atlantic City Police his whereabouts. Instead, they chose to do nothing except harbor Mr. Maragoudakis. As a result of Mr. Maragoudakis's harassing conduct, and the defendants' toleration and/or facilitation of that conduct, Mrs. Berk was subjected to a disability-hostile living environment and suffered a significant injury for which he now seeks redress in this Complaint.

21.    There are several incidents that the defendant does not investigate in violation of FHA which will come to light and be better explained and proven from the discovery of this complaint. Plaintiff waives no right to add to this complaint.

22.    Plaintiff also added in Attachment D, a bill from the defendant of over $5,000 for "legal fees" that are fraudulent, and: overbilling is a type of legal malpractice (or breach of fiduciary duty) that involves lawyers who charge an excessive, unreasonable, or unconscionable fee for their legal services.

23.    Jessica Berk, disabled, has asked the defendant for accounting for five months every week and has gotten no response. The Ritz Carlton Condominium Association has taken advantage of the plaintiff's neurological disability to overcharge her in violation of the FHA making this a financial crime against the disabled and has had to help them. Plaintiff reserves the right to amend the complaint to add all appropriate counts and parties who added this egregious harm to a disabled person.

24.     Plaintiff also asserts that she can not sleep because the fire alarm has been going off for dozens and dozens of days, causing her mental anguish. The Atlantic City Fire Department has to arrive. This drains the resources of the City and causes the plaintiff to lose sleep and have even more severe neurological issues such as headaches, loss of sleep, and jitteriness.

## JURISDICTION AND VENUE

25.     Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a)-(b) and by 28 U.S.C. §§ 1331, 1337, 1343, and 2201. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state law claims for breach of contract, fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress.

26.     Venue is proper in this District because the claims arose in the District of New Jersey.

## PARTIES

27.    Plaintiff Jessica Berk is a Jewish-American disabled woman who self-identifies as a disabled female.  At all relevant times, Mrs. Berk has resided at the 2715 Boardwalk, Atlantic City, New Jersey, 08401 ("the Premises"), at Unit # 1511, Kings Park, New York 11754 ("Unit 1511").

28.    Defendant Ritz Carlton Condominium Association is the property manager at the Premises.

29.    STANLEY MARAGOUNDAKIS is a tenant in the building, apartment number is unknown.

### Ritz Carlton Condominium Association
### Obligations Under the Fair Housing Act ‹ind Civil Rights Laws

30.    Pursuant to the Fair Housing Act, § 1981 and § 1982, upon receiving notice of Mr. Maragoudakis's harassing conduct towards Mrs. Berk, the defendant had an obligation to investigate and to take prompt and effective remedial action.  The defendant's toleration and/or facilitation of Mr. Maragoudakis's disability anti-jewish harassment created a hostile living environment and violated these statutory provisions. Defendant failed to help any other person subject to this action and the plaintiff reserves the right to add plaintiffs to this case.

31.    The defendant must not charge anyone any charges that are not correct especially one who is disabled and to do so is committing fraud, financial fraud against the disabled through the United States mail, and possibly other wrongs. It is the obligation of the defendant not to overbill a disabled person, this is also covered by a myriad of federal and local laws, namely now the New Jersey Fraud Laws.

32.    *The Fair Housing Act prohibits discrimination* based on *disability in all types of housing*

*transactions* etc.

## Offensive Behavior Violations:

33.    The Association's Master Deed, Section 23(b) states that "[n]o immoral, improper, offensive or unlawful use shall be made of the Property nor any part thereof .." The Association's Rules and Regulations, Section 25 states that "[n]o obnoxious or offensive activities of any kind shall be carried on, in or upon the common elements or in any unit or shall anything be done therein either willfully or negligently, which may be or become an annoyance or nuisance to other residents or occupants of the Condominium." The Association's Rules and Regulations, Section 12 states that "[t]he success of the Ritz Condominium Association depends upon the quality of the relationship between the Association, our employees, residents, and the general public. Residents should communicate with other residents and employees in a respectful, honest, and courteous matter. If there is a dispute between a resident and/or employee, the resident or the employee must speak to General Manager. Each dispute will be handled on a case-by-case basis. If the dispute is not settled, the matter can be taken to the Board by either the employee or the resident."

## Harm to Mrs. Berk

34.    Because of the defendant's inactions, constant overbilling, and other harassment, Mrs. Berk was unable to fully use and enjoy the Premises despite having met her obligations each month. Defendant deprived Mrs. Berk of the full value of the Premises. In 2019, Mrs. Berk's rent was $993 per month and later it was increased to $1,058. Mrs. Berk's expenses are compensable harm.

35.    Beginning in January 2019 and continuing to the present, the defendant's actions and failure to act have caused Mrs. Berk to suffer humiliation, embarrassment, and emotional and physical distress, including, without limitation, shock, anger, frustration, panic, fear, and anxiety.

36.    This increased anxiety has resulted in Mrs. Berk's loss of sleep from March 2019 to the present. Mrs. Berk's increased anxiety and loss of sleep are a result of the emotional and physical distress caused by the defendant, which continues to this day.

## CAUSES OF ACTION Count I (42 U.S.C. § 1981)

37.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

38.    Mr. Maragoudakis's actions were sufficiently pervasive and severe to create a hostile environment based on Mrs. Berk's disability. In addition to violating his civil rights, Mr. Maragoudakis's actions interfered with Mrs. Berk's right to peaceably use and enjoy his home.

39.    Defendant tolerated and/or facilitated Mr. Maragoudakis's pattern of disabled conduct, despite repeated specific requests to investigate. Mr. Maragoudakis intervene on behalf of Mrs. Berk. The defendant failed to fulfill their obligations and interfere with Mrs. Berk's right to peaceably use and enjoy his home.

40.    Mr. Maragoudakis's actions and the defendant's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on disability in violation of Plaintiff s rights to make and enforce contracts on an equal basis regardless of disability under 42 U.S.C. § 1981.

## Count II (42 U.S.C. § 1982)

41.     Paragraphs 1 through 36 are realleged and incorporated herein by reference.

42.     Mr. Maragoudakis's actions were sufficiently pervasive and severe so as to create a hostile environment based on disability and seniors.

43.     The defendant tolerated and/or facilitated Mr. Maragoudakis's pattern of anti-disabled conduct, despite repeated specific requests to investigate. Mr. Maragoudakis intervene on behalf of Mrs. Berk.

44.     Mr. Maragoudakis's actions and the defendant's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on disability in violation of the plaintiff's rights to use and convey real property on an equal basis regardless of disability under 42 U.S.C. § 1982

45.     Mr. Maragoudakis's actions and the defendant's tolerance and/or facilitation of said acts demonstrate a willful and gross disregard for the known rights of Mrs. Berk.

## Count III (42 U.S.C. § 3617)

46.     Paragraphs 1 through 36 are realleged and incorporated herein by reference.

3

47.     The defendant tolerated and/or facilitated Mr. Maragoudakis's pattern of disabled abuse conduct, despite repeated specific requests to investigate Mr. Maragoudakis and intervene on behalf of Mrs. Berk.

48.     Mr. Maragoudakis's actions and the defendant's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on discrimination in violation of the plaintiff's rights, as protected by the Fair Housing Act, 42 U.S.C. § 3617. Mrs. Berk's right to use and enjoy his home, after the assertion of his civil rights, was unlawfully interfered with on the basis of her disability.

49.     Mr. Maragoudakis's actions and the defendant's actions and failure to act demonstrate a willful and gross disregard for the known rights of Mrs. Berk.

## Count IV(Fraud)

50.     Paragraphs 1 through 36 are realleged and incorporated herein by reference.

51.     The defendant has billed the plaintiff for charges that do not exist, do not give her an accounting, and take advantage of her disability in violation of the FHA which has protections against financial discrimination on the disabled.

## Count V **Fair Housing Act**

52.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

53.    The defendant tolerated and/or facilitated Mr. Maragoudakis's pattern of disabled abusive conduct, despite repeated specific requests to investigate Mr. Maragoudakis and intervene on behalf of Mrs. Berk.

54.    Mr. Maragoudakis's actions and the defendant's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile environment based on disability in violation of the plaintiff's rights, as protected by the FHA..

55.    Mr. Maragoudakis's actions and the defendant's actions and failure to act demonstrate a willful and gross disregard for the known rights of Mrs. Berk.


## Count V (Common Law Negligent Infliction of Emotional Distress)

56.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

57.    The defendant had a duty to Mrs. Berk based on their landlord-tenant relationship.

58.    The defendant's failure to investigate and intervene in response to Mr. Maragoudakis's violent threats toward Mrs. Berk constitutes extreme and outrageous conduct and caused Mrs. Berk severe emotional distress.

## Count VI (Common Law Breach of Contract)

59.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

60.    The defendants' actions and failure to act, despite repeated specific requests to investigate Mr. Endres's egregious and illegal conduct and intervene on behalf of Mrs. Berk, breached Master Deed as described above. Mrs. Berk, as the Contract stated and intended beneficiary, was harmed as a result of the defendant's breach.

61.    The defendant's actions and failure to act, despite repeated specific requests to investigate Mr. Maragoudakis's conduct and intervene on behalf of Mrs. Berk, breached the defendant's agreement with Mrs. Berk, as described above, to ensure Mrs. Berk's quiet enjoyment of his home.

62.    The defendant's failure to investigate and intervene upon receiving notice of Mr. Maragoudakis's egregious and illegal conduct, which included explicit threats of violence, placed Mrs. Berk and other senior and disabled tenants in imminent danger of physical harm, unreasonably endangered his physical safety, and caused her to fear for his physical safety.

## Count IX (Intentional Infliction of Emotional Distress)

63.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

64.    Mr. Maragoudakis's conduct, including the use of violent threats and disabled epithets, treating her service animal was extreme and outrageous and done with the intent to cause severe emotional distress.

65.    Mr. Maragoudakis's conduct resulted in Mrs. Berk suffering severe emotional distress.

Please see ATTACHMENT E, the stabbing of STANLEY MARAGOUNDAKIS by Ronald Aponte.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a.  a declaratory judgment finding that the actions of the defendant violate 42 U.S.C.

§§ 3604 and 3617,  42 U.S.C. § 1981 and § 1982;

b.  a declaratory judgment finding that the actions of the defendant constitute

negligent infliction of emotional distress and breach of contract;

c.  a declaratory judgment finding that the actions of Maragoudakis constitute

intentional infliction of emotional distress;

d.  compensatory damages in the amount of $60,121 to fully compensate the plaintiff for

out-of-pocket rent paid during the period January 2019 through April 2023

e.  compensatory damages in an amount that would fully compensate the plaintiff for the loss

of enjoyment, humiliation, embarrassment, physical harm, emotional distress, and mental

anguish caused by the defendant's violations of the law;

f.  punitive damages in an amount that would punish the defendant for the willful, wanton,

and reckless misconduct and indifference as alleged in this complaint and that would

effectively deter the defendant from future discriminatory behavior;

g.  reasonable costs; filing fees etc and

h.  all other relief deemed just and equitable by the Court.

## DEMAND FOR JURY TRIAL

Trial by jury is demanded on all issues.

Dated: April 25, 2023

Jessica Berk PLAINTIFF

# ATTACHMENT A



ATTACHMENT B

ATTACHMENT C

**SOCIAL SECURITY ADMINISTRATION**

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
Room 2909
26 Federal Plaza
New York, NY 10278

Date: March 20, 2013

Jessica N. Berk
95 Christopher Street
Apt #15 H
New York, NY 10014

## Notice of Decision -- Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**Office of Disability Adjudication and Review**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

See Next Page

Form HA-L76 (03-2010)

## SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

## DECISION

IN THE CASE OF

Jessica N. Berk
_____
(Claimant)

_____
(Wage Earner)

CLAIM FOR

Supplemental Security Income
_____

██████████
_____
(Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned Administrative Law Judge on a request for hearing. On April 20, 2012, the claimant filed an application for supplemental security income under Title XVI of the Social Security Act, alleging disability due to anemia and a right ankle wound. The claim was denied initially on June 30, 2012, and thereafter the claimant filed a timely request for hearing before an Administrative Law Judge on August 29, 2012. The claimant appeared and testified at a hearing held on March 7, 2013 in New York, New York. The claimant waived the right to representation and appeared without counsel.

## ISSUE

The issue to be decided in this case is whether the claimant is disabled as that term is defined in the Social Security Act for the purpose of determining eligibility for supplemental security income under Title XVI of the Act. Supplemental security income payments do not begin until the month after the month in which the application is filed, assuming all eligibility requirements are met (20 CFR 416.335). Therefore, the issue here is whether the claimant has been disabled since April 20, 2012, the date of filing.

After carefully considering the entire hearing record, it is my conclusion that the claimant is disabled within the meaning of the Social Security Act and that she has been disabled since April 20, 2012, the date of filing.

## APPLICABLE LAW AND REGULATIONS

"Disability" is defined in the Social Security Act as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment(s) which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual is not considered disabled if drug addiction and/or alcoholism materially contributes to the finding of disability.

See Next Page

Jessica N█████████                                                      Page 2 of 6

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a "severe" medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a "severe" impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not "severe" (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally


performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given her residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1. **The claimant has not engaged in substantial gainful activity since April 20, 2012 (20 CFR 416.920(b)).**

2. **The claimant has the following severe impairment(s): pernicious anemia and neuropathy (20 CFR 416.920(c)).**

The medical evidence shows that the claimant's medical impairments cause significant work related functional limitations for the exertional demands of work. The claimant's medical impairments are therefore "severe" impairments.

3. **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

No medical source has opined that the claimant's impairments meet or medically equal the requirements of a listed impairment. I have also carefully reviewed the medical evidence and find that the evidence fails to show that the claimant has an impairment that meets or medically equals the requirements of any listed impairment.

4. **After careful consideration of the entire record, I find that the claimant has the following residual functional capacity: she can sit for up to 6 hours in an 8-hour workday,**

 Jessica

**stand or walk for up to 2 hours total in an 8-hour workday, and carry objects weighing up to 10 pounds occasionally. She is able to perform the full range of sedentary work, as defined in 20 CFR 416.967(a).**

The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. The vast majority of sedentary jobs are performed indoors, so outside environmental limitations are not significant (20 CFR 416.967, SSR 83-10 and SSR 85-15).

In making my finding, regarding the claimant's residual functional capacity, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

Records from Beth Israel Medical Center (BIMC) show that the claimant was hospitalized from January 31, 2012 to February 17, 2012 due to pernicious anemia and dehydration. She had fallen and was on the ground for three days. Upon admission, she was disorganized and confused. Her condition improved gradually (Ex. 1F). Subsequent outpatient reports and records from treating physician Dr. I. Halperin indicate the claimant suffers from neuropathy affecting her upper and lower extremities. Reports also confirm that she has a right leg wound for months that has not healed (Ex. 5F, 6F).

The claimant underwent a consultative physical examination in connection with her SSI claim, performed by Dr. S. Gearhart on June 18, 2012. The claimant reported that her neuropathy symptoms started about 6 months prior to her January 2012 hospitalization. She complained of pain and numbness of the hands and feet, cold intolerance, and overall weakness and fatigue. Her right leg was fitted with a Una boot for a right leg infection, which she said began in July 2011. She had a wheelchair that she used for balance. Dr. Gearhart stated that the wheelchair was not medically necessary but that a cane or walker should be considered. She had a slow gait and was unable to walk on her heels and toes. She refused to change for the examination or lie down on the examining table due to fear of dizziness. While there were no significant neurological findings (Dr. Gearhart recommended a specific neurological examination be performed) she concluded that the claimant had moderate restrictions for heavy lifting and carrying, especially on the left side, and that she had marked restrictions for prolonged walking, standing, and sitting (Ex. 2F).

At the hearing, the claimant testified that her right leg wound continues to be infected. Dr. Halperin told her that this was because her anemia and neuropathy caused her to have difficulty with wound healing. She continues to have neuropathy symptoms involving her upper and lower extremities. She uses a wheelchair or a walker when she goes out.

See Next Page



After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are credible. The medical evidence shows that the claimant has chronic numbness and pain of the extremities as well as overall weakness as a result of anemia and neuropathy. Clearly, these conditions cause the claimant to have significant difficulty with lifting, carrying, and prolonged standing and walking. She is therefore limited to sedentary work. I give great weight to the conclusions of Dr. Gearhart, which is the only medical opinion in the record. Her opinion is not contradicted by any other medical opinion and is consistent with the objective medical evidence.

**5.  The claimant has no past relevant work (20 CFR 416.965).**

The claimant did not work in the 15-years period prior to the date of filing.

**6.  The claimant is currently 53 years of age, defined as closely approaching advanced age (20 CFR 416.963).**

The claimant was born on June 2, 1959.

**7.  The claimant has more than a high school education (20 CFR 416.964).**

The claimant is a high school graduate with two years of college.

**8.  Considering the claimant's age, education, work experience, and significantly diminished residual functional capacity, jobs do not exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the Medical-Vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the Medical-Vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Here, the claimant's medical impairments limit her to sedentary work. She is closely approaching advanced age, completed two years of college, and has no past relevant work. In consideration of her residual functional capacity and vocational profile, Medical-Vocational Rule 201.12, Table No. 1 of Appendix 2, Subpart P of Regulations No. 4 applies and directs a

See Next Page



Page 6 of 6

conclusion that jobs do not exist in significant numbers in the national economy that the claimant can perform and that the claimant is "disabled" within the meaning of the Social Security Act.

**9. The claimant has been disabled, as defined in the Social Security Act, from April 20, 2012 through the date of this decision (20 CFR 416.920(g)).**

I find that claimant's impairment meet the durational requirement as claimant's impairment is expected to last for a continuous period of not less than 12 months.

## DECISION

It is the decision of the Administrative Law Judge that based on the application for supplemental security income filed on April 20, 2012, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on April 20, 2012.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

/s/ *Gitel Reich*

Gitel Reich
Administrative Law Judge

March 20, 2013
Date

ATTACHMENT D



850 Carolier Lane, North Brunswick, N.J. 08902
Phone: 732-246-1221  •  Fax: 732-246-1872
www.TheAssociationLawyers.com
North Brunswick • Brick Township • Jersey City • Brigantine
(Brigantine office is meeting location by appointment only)

February 2, 2023

*Via Regular Mail & E-Mail: pridestreet@gmail.com*
Jessica Berk
2721 Boardwalk at Iowa Avenue
Unit 1511
Atlantic City, NJ 08401

**Re: The Ritz Condominium Association, Inc.; 2721 Boardwalk Unit 1511, Atlantic City, NJ**

Dear Ms. Berk:

**We represent The Ritz Condominium Association, Inc. (the "Association"). This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

The current balance on your account through February 2, 2023, is **$3,740.39**. A copy of the statement of account is attached. The sum is detailed below:

| | | |
|---|---|---|
| Maintenance Fees: | $36,645.00 | (Master Deed, Section 10(d) and By-Laws, Article VI, Section 1) |
| Special Assessment | $ 1,059.00 | (Master Deed Section 10(c) |
| Late Fees: | $    640.00 | (By-Laws, Article VI, Section 9) |
| NSF Fee: | $      25.00 | (By-Laws, Article VI, Section 9) |
| Attorneys' Fees: | $ 5,267.79 | (Master Deed, Section 10(f) and By-Laws, Article VI, Section 9) |
| Credits: | $39,896.40 | |
| **Total:** | **$ 3,740.39** | |

Although payments continue to be received by the Association, no formal agreement exists between yourself and the Association.

Please notify our office by February 15, 2023, if you wish to enter into a Settlement Agreement. If a Settlement proposal or payment in full is not received on or before February 15, 2023 our office has been instructed by the Association to continue with our collection efforts. The legal fees associated with these actions will be added to your Association account balance.

Any payments received that are less than the total amount due to the Association at the time of receipt of such payment will be applied toward any outstanding arrearage but shall not constitute an accord and satisfaction of your debt.

If you have any questions, please contact our office.

Sincerely,
McGovern Legal Services, LLC

By: _____
Marlena S. Diaz-Cobo, Esquire

cc:    Delores Hill, Paralegal

ATTACHMENT E

# Atlantic City man held in stabbing of neighbor on Boardwalk

Lynda Cohen|April 8, 2022

An Atlantic City man accused of attempted murder in the daylight stabbing of his neighbor on the Boardwalk was ordered held in jail Friday.

Ronald Aponte's argument that there was a potential for self-defense did not sway the judge, who noted there was no indication on surveillance video or from witnesses that the victim attacked him.

Victim Stanley Maragoudakis, 63, "frequently berated both building tenants and people on the Boardwalk, particularly women, the elderly and disabled," mutual neighbors told investigators.

ADVERTISING

The defense also submitted a police report from a neighbor who said Maragoudakis threatened to kill her.

But this did not give 64-year-old Aponte the right to stab him several times, including in the back, Superior Court Judge Pam D'Arcy said in ruling he be detained.

"It appears to be completely unprovoked," Assistant Prosecutor Gina Deannuntis says of the attack.

"The victim may or may not be a bad guy," the judge said. "However, this does not give the defendant the right to violently stab him multiple times."

Aponte was running on the Boardwalk in front of the Tropicana Atlantic City when the attack occurred just before 11 a.m. March 22.

He then ran back to his 10th-floor apartment at the Ritz, where he changed clothes before he was ultimately arrested, according to the charges.

The attack was captured on two surveillance cameras and witnessed by an off-duty Marlboro police officer, according to the affidavit of probable cause and information given in court.

The public safety report, which helps determine whether a person is held under bail reform, recommended Aponte not be released.

But his attorney, Marco Laracca, told the judge there's "a strong defense for self-defense. That's something a computer can't look at when we put it into the system."

The judge said there was no evidence of that the victim attacked Aponte, and noted that the stab wounds were to the torso and back, "indicating at some point the victim attempted to turn away and the defendant continued to stab him."

Aponte also has served "prior significant state prison time," the judge noted.

He has a prior conviction for receiving child pornography.

### Atlantic City man charged with attempted murder in stabbing on Boardwalk

An Atlantic City man is charged with attempted murder in the stabbing of an acquaintance Tuesday on the Boardwalk. The 63-year-old victim from the city was stabbed in the 2800 block of the Boardwalk in the area of the Tropicana, police said. His identity is not being released. Officer Huan Le arrived at the scene … [Read more](#)

Up Next - Preview Show: How aggressive will racing get at Talladega?
Ad 1 of 1 (0:14)

volume_off volume_up



To

RITZ CARLTON

25 Main Street, Suite 500
Hackensack, New Jersey 07601