**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| JESSICA BERK AND WILLIAM HENRY KENNEDY, | Civ. No. 1:23-cv-1877-NLH-MJS |
| Plaintiffs, | **OPINION** |
| v. | |
| RITZ CARLTON CONDOMINIUM ASSOCIATION, ET AL. | |
| Defendants. | |

---

**APPEARANCES:**

JESSICA BERK
2715 BOARDWALK, UNIT 1511
ATLANTIC CITY, NJ 08401

   *Appearing pro se*

WILLIAM HENRY KENNEDY[1]

---

[1] This Court notes that there is no address of record for this *pro se* Plaintiff.  *Pro se* litigants are responsible for keeping the Court apprised of their address throughout the litigation. Local Rule 10.1(a) ("Counsel and/or unrepresented parties must advise the Court of any change in their or their client's address within seven days of being apprised of such change by filing a notice of said change with the Clerk."); Hunt-Ruble v. Lord, Worrell & Richter, Inc., No. 10-4520, 2012 WL 2340418, at *4 (D.N.J. June 19, 2012) ("Because Defendant Worrell is proceeding *pro se* in this action rather than through counsel, he is directly responsible for his conduct in this litigation, particularly in his failure to comply with the Court's Orders and to advise the Court of any change in his address."). In order to proceed in this litigation, Plaintiff William Henry Kennedy must provide the Court with a current address. This

*Appearing pro se*

ROBERT ALAN BERNS
KAUFMAN DOLOWICH LLP
25 MAIN STREET, SUITE 500
HACKENSACK, NJ 07601

*Counsel for Defendant Ritz Carlton Condominium Association*

STANLEY MARAGOUDAKIS
2715 BOARDWALK, APT 1017
ATLANTIC CITY, NJ 08401

*Appearing pro se*

**HILLMAN**, **District Judge**

Before the Court is Defendant Ritz Carlton Condominium Association's Motion to Dismiss (ECF 14), Plaintiffs' Motion to Amend (ECF 26), and Plaintiffs' Motion to Permit Consideration of Reply (ECF 29). For the reasons expressed below, Defendant's Motion to Dismiss will be granted in part and denied in part; Plaintiffs' Motion to Amend will be granted in part and denied in part; and Plaintiffs' Motion to Consider will be granted.

I.   **BACKGROUND**

Plaintiffs are two individuals, Jessica Berk ("Berk" or "Plaintiff Berk") and William Henry Kennedy ("Kennedy" or "Plaintiff Kennedy") (collectively, "Plaintiffs"). Plaintiff Berk lives at the Ritz Carlton Condominium building in Atlantic

_____

will be reflected in this Court's Order accompanying this Opinion.

City, New Jersey, where she owns a condominium unit.  (First
Amended Complaint, ECF 7 at ¶ 14).  Plaintiffs do not allege
whether Plaintiff Kennedy lives in the Ritz or elsewhere.
Plaintiffs allege that Kennedy is disabled.  (Id. at ¶ 2).  Berk
is Jewish and is "visibly disabled."  (Id. at ¶¶ 5-10).  She
"walks with a cane or wheelchair for support" and has an
emotional support service animal, previously a dog named
Angeline Jolie and presently a cat named Gemini.  (Id. at ¶¶ 2,
23, 76-77).  She also has a neurological condition that results
in blackouts and passing out.  (Id. at ¶ 24).  Berk has a number
of limitations, including that she cannot carry anything over
seven and a half pounds, and she "has problems grasping at
things such a doors or using cards."  (Id. at ¶¶ 26-27).  She
receives social security benefits for her disability.  (Id. at ¶
11).  Plaintiffs aver that Kennedy shares the emotional support
cat.  (Id. at ¶ 2).

Defendants are the Ritz Carlton Condominium Association
("the Ritz" or "Defendant Ritz"), which governs the Ritz Carlton
Condominium building Plaintiff Berk resides in, and Stanley
Maragoudakis ("Maragoudakis" or "Defendant Maragoudakis"),
another resident of the Ritz.  (Id. at ¶¶ 14, 16).

Berk alleges that since she has moved into the Ritz,
Maragoudakis has "frequently yelled vulgar discriminatory
language" at her and other tenants.  (Id. at ¶ 16).  She avers

3

that he has made offensive comments to her related to her disability and her membership in the LGBTQ community in addition to using anti-Jewish epithets. (Id.). She states that he "attacks seniors and disabled people in the apartment building and on the Boardwalk." (Id. at ¶ 17). Berk states that the comments include death threats against her and others, as well as against her emotional support cat. (Id. at ¶¶ 21, 28).

Berk explains that these comments and threats are documented through complaints to the Ritz Carlton Condominium Association and the Atlantic City Police Department. (Id. at ¶¶ 19, 21). Berk details one instance of Maragoudakis threatening her, explaining that in March 2022, Maragoudakis was stabbed by another then-resident of the Ritz, Raymond Apponte. (Id. at ¶ 35). Upon leaving the hospital after this stabbing, Berk avers that Maragoudakis threatened to kill her. (Id. at ¶ 36).

Plaintiff Berk alleges that others in the building have also made death threats towards her service dog, and have repeatedly insulted her about her disability. (Id. at ¶ 29).

Plaintiff Berk avers that the Ritz has failed to protect her against Maragoudakis and failed to investigate her complaints against him. (Id. at ¶¶ 32-33, 39, 41-42). Plaintiff Berk also alleges that security guards employed at the Ritz repeatedly mocked her for her disability and would not open

the door for her when she was unable due to her disability. (Id. at ¶¶ 29-31).

On April 28, 2023, Plaintiff Berk filed her initial Complaint. (ECF 1). Plaintiffs then filed their First Amended Complaint on May 30, 2023. (ECF 7). This Amended Complaint included an additional Plaintiff, Plaintiff Kennedy, although he had not been a party in the initial Complaint, nor did he pay his own filing fee.[2] On July 7, 2023, Defendant Ritz Carlton Condominium Association filed a Motion to Dismiss. (ECF 14). On August 7, 2023, Plaintiffs filed their Response in Opposition. (ECF 19). Plaintiffs filed an additional Response on August 11, 2023. (ECF 21). Defendant Ritz filed its Reply

---

[2] Pursuant to Local Civil Rule 54.3, the Clerk shall not be required to enter any suit, file any paper, issue any process, or render any other service for which a fee is prescribed, unless the fee is paid in advance. Under certain circumstances, however, this Court may permit an indigent plaintiff to proceed *in forma pauperis.* The entire fee to be paid in advance of filing a civil complaint is $405. This includes a $350 filing fee and $55 administration fee. Although Plaintiff Berk paid a filing fee when she filed the initial Complaint, Plaintiff Kennedy must file his own filing fee. Corsey v. Camden Cnty. Admin., No. 09-2120, 2009 WL 4118111, at *4 (D.N.J. Nov. 17, 2009) ("Before this Court can determine whether joinder is appropriate, all co-plaintiffs wishing to participate in this case must submit and sign an amended complaint clearly identifying each plaintiff and his claims, and they must either pre-pay the $350 filing fee or each co-plaintiff must submit an individual application for leave to proceed *in forma pauperis.*").

on August 21, 2023.  (ECF 24).  On August 28, 2023 Plaintiffs filed a letter objecting to the Ritz's Reply brief.[3]  (ECF 25).

Then, also on August 28, 2023, Plaintiffs filed a Motion for Leave to File an Amended Complaint.  (ECF 26).  Defendant Ritz Carlton filed its Response on September 25, 2023.  (ECF 31).  Plaintiffs' Reply was due on October 2, 2023.  (ECF 30). On October 4, 2023, Plaintiffs filed a letter seeking an extension of that deadline.  (ECF 32).  On October 8, 2023, Plaintiffs Filed a Motion to Consider their untimely Reply along with their Reply.  (ECF 33).

On October 13, 2023, Defendant Maragoudakis filed an Answer.[4]  (ECF 35).  Defendant Maragoudakis then filed additional letters on October 23, 2023 (ECF 34), November 3, 2023 (ECF 36), and November 7, 2023 (ECF 38).  Although Defendant Maragoudakis had already filed a document that this Court understands to be an Answer, the November 7, 2023 letter is titled "Motion to

---

[3] Plaintiffs state that Defendant must seek leave to file a Reply.  However, this is only the case with respect to certain motions, of which a Motion to Dismiss is not one.  Local Civil Rule 7.1(d)(3).  In addition, this Court notes that a party must seek leave to file a sur-reply, but not a reply.  Local Civil Rule 7.1(d)(6).

[4] Although the document is not titled "Answer," it consists of numbered paragraphs responding to the allegations in the First Amended Complaint.

Dismiss."[5]  (ECF 38).  On November 10, 2023, Plaintiffs filed a letter responding to Defendant Maragoudakis' Answer and letters. (ECF 37).  On November 17, 2023, Defendant Maragoudakis filed another letter.  (ECF 39).

The First Amended Complaint, which is the operative complaint at this time, alleges the following counts: (1) violations of 42 U.S.C. § 1981 against both named defendants [Counts I and II]; (2) violations of 42 U.S.C. § 1982 against both named defendants [Counts III and IV]; (3) violations of 42 U.S.C. § 3617 against both named defendants [Counts V and VI]; (4) fraud and "FHA financial violations" against the Ritz [Count VII]; (5) violations of the Fair Housing Act against both named defendants [Counts VIII and IX]; (6) Negligent Infliction of Emotional Distress against the Ritz [Count X]; (7) "Negligent Infliction of Emotional Distress, FHA Service animal, and Emotional Support Animal violations" against the Ritz [Count

---

[5] Although this Letter is titled "Motion to Dismiss" and asks the Court to dismiss the Counts against him, this Court does not construe this filing as a formal Motion to Dismiss as it does not set out any of the reasons for dismissal enumerated in Federal Rule of Civil Procedure 12(b) nor does it cite to this rule.  Rather, in this Letter Defendant Maragoudakis reiterates many of the factual points and denials he set out in his initial responsive filing and adds a few additional factual points. There is no legal argument contained in this filing, only factual discussion not suitable for the Motion to Dismiss phase. From Defendant Maragoudakis' multiple letters to this Court it appears there are many factual disputes.  These factual disputes will be addressed at a later phase of the litigation.

XI]; Breach of Contract against the Ritz [Count XII]; (8) Intentional Infliction of Emotional Distress against both named Defendants [Count XIII]; (9) Invasion of Privacy against "Ritz Carlton Condominium Association Employees and the Does 1-20" [Count IVX[6]]; and (10) Intentional Infliction of Emotional Distress against the Ritz and "the Doe Defendants" [Count VX].

## II.   **SUBJECT MATTER JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiffs assert at least one violation of federal law against each of the named Defendants, as well as under § 1367.

## III.  **LEGAL STANDARD FOR MOTION TO DISMISS**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

---

[6] This Court notes that it has labeled the Counts using the labels Plaintiffs used in the First Amended Complaint, rather than adjusting the Count numbers to how they would appear next in Roman Numeral chronology.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (first alteration added) (second alteration in original) (citation omitted).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).  A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

"A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  <u>Malleus</u>, 641 F.3d at 563 (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 570).

**IV.   DISCUSION OF MOTION TO DISMISS**

### A. Violations of 42 U.S.C. § 1981 against both named defendants [Counts I and II]

In Counts I and II, Plaintiffs allege violations of 42 U.S.C. § 1981.  Title 42, Section 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  § 1981(b) defines the language "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Although § 1981 protects against discrimination based on race, "[t]he Supreme Court, however, has taken an expansive view of the notion of race as it relates to § 1981 claims in view of contemporaneous legislative history from a period when race,

national lineage, ancestry and ethnicity were often conflated."
Powell v. Indep. Blue Cross, Inc., No. 95-2509, 1997 WL 137198,
at *6 (E.D. Pa. Mar. 26, 1997) (holding that "§ 1981 must be
read to encompass discrimination against a plaintiff because of
his Jewish ancestry or ethnicity."). "To establish a right to
relief under § 1981, a plaintiff must show (1) that he belongs
to a racial minority; (2) 'an intent to discriminate on the
basis of race by the defendant; and (3) discrimination
concerning one or more of the activities enumerated in' § 1981,
including the right to make and enforce contracts." Pryor v.
Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir.
2002) (quoting Brown v. Phillip Morris, Inc., 250 F.3d 789, 797
(3d Cir. 2001)).

Defendants Ritz argues that Plaintiffs cannot state a claim
under § 1981 because they do not allege discrimination on the
basis of race. (ECF 14-2 at 18). Defendant Ritz notes that
"Courts interpret race broadly under Section 1981 to include
race, color, ancestry, and ethnic characteristics," and
acknowledges Berk's averment that she is Jewish, but still
concludes that "[s]he does not allege discrimination on the
basis of race." (ECF 14-2 at 17-18). As for Plaintiff Kennedy,
Defendant asserts that "there is no allegation about his
religion and no allegation that he is a member of a protected
class under § 1981." (Id.).

Plaintiffs respond by pointing to cases in which Courts have explained that discrimination on the basis of ancestry or ethnic characteristics fall under the protections of § 1981. (ECF 19 at 6–7 (citing St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987); Bachman v. St. Monica's Congregation, 902 F.2d 1259, 1261 (7th Cir. 1990); United States v. Brown, 49 F.3d 1162, 1166 (6th Cir. 1995)).   Plaintiff also explains that "Jessica Berk is being discriminated against as a disabled person, as a member of the LGBTQAI (sexual orientation), and as a member of Jewish Ancestry (race), as well as William Kennedys, is being discriminated for being Hispanic disabled (race) and of Jewish Ancestry (race)" and suggests that she may file an amended complaint if these details are unclear from the First Amended Complaint.   (ECF 19 at 6).

Defendant Ritz argues that this Court should not consider alleged facts presented for the first time in Plaintiffs' responsive briefing.   (ECF 24 at 10–11).   It points specifically to the new information about both Plaintiffs' protected class status.   (Id. at 11).   This Court notes that the allegations about Plaintiff Kennedy's race are new to this briefing.   "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."   Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir.1988)   As such, in examining this Motion to Dismiss Plaintiff Kennedy's

race is not part of the analysis.  Because § 1981 protects
against racial discrimination, and the Amended Complaint lacks
any allegations about Plaintiff Kennedy's race, these Counts
will be dismissed as brought by Plaintiff Kennedy against the
Ritz.

Defendant argues that there are no allegations in the
Amended Complaint that allege racial discrimination in support
of the § 1981 claims brought by Plaintiff Berk.  However, in the
First Amended Complaint, Plaintiffs allege that "[p]ursuant to
the Fair Housing Act, § 1981 and § 1982, upon receiving notice
of Mr. Maragoudakis's harassing conduct towards Ms. Berk, the
Defendant had an obligation to investigate and to take prompt
and effective remedial action.  The Defendant's toleration
and/or facilitation of Mr. Maragoudakis's disability anti-jewish
harassment created a hostile living environment and violated
these statutory provisions."[7]  (ECF 7 at ¶ 108).

Jewish identity may fall within the protections against
race discrimination under § 1981.  Powell v. Indep. Blue Cross,
Inc., No. 95-2509, 1997 WL 137198, at *6 (E.D. Pa. Mar. 26,
1997) ("§ 1981 must be read to encompass discrimination against

---

[7] In support of the § 1981 claims, Plaintiffs also allege that
Defendants created a hostile environment based on Plaintiff
Berk's disability.  (ECF 7 at ¶¶ 122-126).  This Court notes
that any allegations related to Plaintiffs' alleged disabilities
are unrelated to the § 1981 claims, which protect against
discrimination on the basis of race.

a plaintiff because of his Jewish ancestry or ethnicity."). Courts in the Third Circuit have found that while § 1981 does not protect against religious discrimination, it does protect against discrimination based on Jewish ancestry.  Id. at *7 ("a plaintiff does not state a § 1981 claim by alleging that a defendant discriminated against him because of his adherence to or practice of the Jewish religion.  Plaintiff, however, alleged that his 'race' is Jewish.  If plaintiff can prove that he is an ancestral Jew, he may be able to sustain a § 1981 claim on that basis."); A. & M. Wholesale Hardware Co. v. Circor Instrumentation Techs., Inc., No. 13-0475, 2014 WL 714938, at *6 (D.N.J. Feb. 24, 2014) ("The Amended Complaint's allegations of the anti-Semitic slurs coupled with A & M's apparent success in distributing Hoke's products, sufficiently plead a violation of § 1981.") (citation omitted).

Defendant points to the paragraphs under the Counts I and II headings and states that "none of the allegations relating to Defendant Maragoudakis or Defendant Ritz relate to or address discrimination based upon race as prohibited by 42 U.S.C. § 1981." (ECF 14-2 at 19).  Instead, it notes that Plaintiffs refer to discrimination based on disability.  However, in support of these claims, Plaintiffs incorporate the prior paragraphs by reference.  (ECF 7 at ¶ 121).  While it appears earlier in the First Amended Complaint, Plaintiff Berk does

14

connect her § 1981 claim to her Jewish identity, complaining of
"anti-[J]ewish harassment."  (ECF 7 at ¶ 108).  Although the
First Amended Complaint does not specify whether she is
referring to her religion or ancestry in describing the alleged
discrimination based on her being Jewish, there is enough here
to allege that she is protected under § 1981 at this stage.

That said, Defendant Ritz asserts that the allegations
against the Ritz do not constitute a violation under § 1981.
Defendant Ritz explains that "Plaintiffs also assert Plaintiff
Berk was subjected to Defendant Maragoudakis egregious
harassment and conduct and Defendant Ritz failed to investigate
which violated her rights and created a hostile living
environment.  However, Plaintiffs fail to assert *how* the alleged
failure to intervene constitutes a violation under the FHA."
(ECF 14-2 at 18) (citation omitted) (emphasis in original).
Defendant argues that the allegations do not "relate to or
address discrimination based upon race as prohibited by 42
U.S.C. § 1981."  (Id. at 19).  Whereas § 1981 prohibits racial
discrimination in the context of contracts, "the basis for the
discrimination claims principally arise from Plaintiffs
interactions and encounters with another resident of Defendant
Ritz who allegedly discriminated against Plaintiffs on the basis
of their disabilities."  (Id. at 8).  This Court agrees that
from the facts alleged Plaintiff Berk has failed to explain how

15

the alleged conduct from other tenants implicates any contractual relationship between her and the Ritz.

Discrimination under § 1981 must be intentional discrimination based on race.  Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").  The First Amended Complaint does not allege intentional discrimination by the Ritz in their alleged failure to investigate the conduct of Defendant Maragoudakis.

Next, the alleged discrimination must concern "one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts."  Pryor, 288 F.3d at 569 (quoting Brown, 250 F.3d at 797).  As noted above, the right to make and enforce contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Plaintiff Berk does not allege any term or condition of any contract that requires the Ritz to investigate the behavior of other residents nor protect one resident from another.  Plaintiff Berk has failed to allege discrimination concerning the activities protected by and enumerated in § 1981.

16

Because Plaintiff Berk has not alleged intentional discrimination related to her contract with the Ritz and has not alleged any discrimination concerning her right to make and enforce her contract, Plaintiff Berk has not established a violation of § 1981 against the Ritz sufficient to withstand a Motion to Dismiss.

Accordingly, Plaintiffs' § 1981 claims, Counts I and II, will be dismissed against Defendant Ritz.

### B. Violations of 42 U.S.C. § 1982 against both named defendants [Counts III and IV]

As noted above, Plaintiffs allege that "[p]ursuant to the Fair Housing Act, § 1981 and § 1982, upon receiving notice of Mr. Maragoudakis's harassing conduct towards Ms. Berk, the Defendant had an obligation to investigate and to take prompt and effective remedial action.  The Defendant's toleration and/or facilitation of Mr. Maragoudakis's disability anti-jewish harassment created a hostile living environment and violated these statutory provisions."  (ECF 7 at ¶ 108).

In support of the § 1982 claims, Plaintiffs also allege that Defendants created a hostile environment based on Plaintiff Berk's disability and age.  (ECF 7 at ¶¶ 128–134).  This Court notes that any allegations related to Plaintiffs' alleged disabilities and age are unrelated to the § 1982 claims, which protect against discrimination on the basis of race.

Defendant again asserts that Plaintiffs have not alleged race-based discrimination under § 1982.  As set out above, there are no allegations about Plaintiff Kennedy's race in the First Amended Complaint.  Accordingly, Plaintiff Kennedy's § 1982 claim against the Ritz will be dismissed.  As with § 1981, Plaintiff Berk has tied the allegedly discriminatory conduct to her Jewish identity, which may constitute race discrimination under § 1982 as well.  That said, Defendant Ritz asserts that Plaintiffs' allegations that the Ritz "tolerated and facilitated" Defendant Maragoudakis' behavior in using discriminatory language and anti-Jewish epithets does not create a cognizable claim under § 1982.  (ECF 14-2 at 20).

42 U.S.C. § 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  There is not a single allegation in Plaintiffs' complaint that they were prevented from inheriting, purchasing, leasing, selling, holding, or conveying property.  Accordingly, Counts III and IV must be dismissed against Defendant Ritz.

### C. Violations of 42 U.S.C. § 3617 against both named defendants [Counts V and VI]

Title 42, United States Code, Section 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or

18

interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  Sections 3603 and 3604 of Title 42 relate to the prohibition of discrimination in the sale or rental of housing.  § 3605 relates to residential real estate transactions, which includes making or purchasing real estate loans and selling, brokering, or appraising residential real property.  Finally, § 3606 relates to the provision of real estate brokerage services.

Defendant Ritz argues that "Plaintiff fails to allege that Defendant's conduct violated any of the specific provisions outlined in § 3617."  (ECF 14-2 at 23).  The Ritz explains why each provision does not apply:

> Specifically, § 3603 and § 3604 do not apply to the instant facts.  Plaintiff Berk owns her unit; she was not hindered in her ability to purchase. Section 3605 is not triggered because Plaintiff Berk has owned her unit since 2019, and there is no residential real estate transaction at issue. Finally, § 3604 does not apply because Plaintiffs are neither real estate agents nor brokers, and the Multiple Listing Service or any similar entity is not involved.

(ECF 14-2 at 23).

Plaintiffs respond that "[a] Fair Housing Act interference claim does not require a substantive violation of the discrimination provisions of the FHA" and "[i]nterference under Section 3617 may consist of harassment, provided that it is *sufficiently severe or pervasive*' as to create a hostile environment."  (ECF 19 at 9, 11) (emphasis in original).  Pointing to the allegations in the First Amended Complaint, Plaintiff Berk argues that she was harassed by employees of the Ritz circulating a photo of her passed out outside of the building.  (Id. at 9).  She also alleges that she was barred from reviewing her accommodation requests.  (Id. at 10).

In the First Amended Complaint, Plaintiffs allege that "Defendant Ritz Carlton Condominium Association tolerated and/or facilitated Mr. Maragoudakis's pattern of disabled abuse conduct, despite repeated specific requests to investigate Mr. Maragoudakis and intervene on behalf of Ms. Berk."  (ECF 7 at ¶ 136).  Plaintiffs further assert that Defendant Maragoudakis' conduct and the Ritz's toleration of the same conduct interfered with "Ms. Berk's right to use and enjoy her home, after the assertion of her civil rights."  (Id. at ¶¶ 138-39).  Plaintiffs also refer to the alleged incident in the Amended Complaint during which Ritz employees circulated photos of Plaintiff Berk. (ECF 7 at ¶¶ 98-99).  The Amended Complaint does not include allegations that she was barred from reviewing her accommodation

requests.  It does however allege instances of staff not letting Plaintiff Berk in the building when she was unable to open the door and "charging the plaintiff for entry into her building for not being able to use the key card due to her disability and other harassment, Ms. Berk was unable to fully use and enjoy the Premises despite having met her financial obligations each month."  (ECF 7 at ¶¶ 29, 118).

There are no allegations related to Plaintiff Kennedy in support of this claim, and accordingly Plaintiff Kennedy's claims under § 3617 will be dismissed against Defendant Ritz.

"A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed 'any right granted or protected by' Sections 3603–3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct. 42 U.S.C. § 3617." Revock v. Cowpet Bay W. Condo. Ass'n, 853 F.3d 96, 112–13 (3d Cir. 2017). A claim under § 3617 "does not require a substantive violation of Sections 3603–3606." Id. at 112.  Rather, a plaintiff can also support a claim for a violation of § 3617 where a defendant's actions interfere with a plaintiff's enjoyment of his or her housing obtained under the protections of Sections 3603 through 3606.  Raab Fam. P'ship v. Borough of Magnolia, No. 08-5050, 2009 WL 361135, at *5 (D.N.J. Feb. 13, 2009) ("[I]n

21

order to prevail on a § 3617 claim, the plaintiff must show that (1) he is a protected individual under the FHA, (2) he was engaged in the exercise or enjoyment of [his] fair housing rights, (3) Defendants were motivated in part by an intent to discriminate, or their conduct produced a disparate impact, and (4) Defendants ... interfered with Plaintiff on account of [his] protected activity under the FHA.").

"Interference under Section 3617 may consist of harassment, provided that it is 'sufficiently severe or pervasive' as to create a hostile environment." Revock, 853 F.3d at 113. Moreover, § 3604 "also makes it unlawful, in the case of disabled persons, to refuse 'to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.' 42 U.S.C. § 3604(f)(3)(B)." Mitchell v. Walters, No. 10-1061, 2010 WL 3614210, at *5 (D.N.J. Sept. 8, 2010).

First, this Court expresses its skepticism that the alleged single instance of Ritz staff passing around photographs of Plaintiff Berk passed out supports the § 3617 claim or that Ritz's alleged failure to intervene against Defendant Maragoudakis' alleged behavior would be sufficiently severe or pervasive. See Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F. Supp. 2d 1133, 1144-45 (S.D. Fla. 2004) ("A failure to

act does not rise to the level of the egregious overt conduct that has been held sufficient to state a claim under section 3617.").

However, the allegation in the First Amended Complaint that Ritz staff refuse to let her in the building when she is unable to swipe in due to her disability and the allegation that Plaintiff Berk was charged fees for staff letting her in the building when she was unable to use her key card may support a claim under § 3617 when coupled with other allegations.  Based on these allegations, Plaintiff Berk's claims against Defendant Ritz under § 3617 will be permitted to proceed.  Defendant's Motion to Dismiss will be denied on these counts as to Plaintiff Berk.

Accordingly, Counts V and VI remain against Defendant Ritz on behalf of Plaintiff Berk.

### D. **Fair Housing Action Violations in Counts VII, VIII, IX**

Defendant next asserts that Plaintiffs fail to state a claim under the Fair Housing Act, as stated in Counts VII, VIII, and IX because "Plaintiffs generically assert violations of the FHA but fail to articulate or cite to the specific provision of the FHA which outlines the protections to which Defendant is alleged to have violated."  (ECF 14-2 at 9).  Accordingly, Defendant argues that "as a matter of pleading sufficiency,

these counts of the First Amended Complaint fail."  (Id.).  This Court will address this argument with respect to each count.

### i. Fraud and "FHA financial violations" against Ritz Carlton Condominium Association [Count VII]

Defendant does not make any further substantive argument on this Count other than to state that it is insufficient for failing to point to a specific provision of the Fair Housing Act.

The First Amended Complaint alleges in support of this Count that "[t]he Defendant must not charge anyone any charges that are not correct especially to a protected person who is disabled that has difficulties, this includes fraudulent charges. . . . It is the obligation of the Defendant . . . not[8] to investigate any overbilling and explain the findings to any Tenant especially a disabled one in a way that they can understand."  (ECF 7 at ¶ 109).  Plaintiff Berk further alleges that "Defendant has billed Plaintiff for charges that do not exist, do not give Jessica Berk an accounting, thereby taking advantage of her disability in violation of the FHA which has protections against financial fraud, and financial discrimination protections."  (ECF 7 at ¶ 142).

---

[8] Plaintiff Berk inserts the word "not" here which appears to be a typographical error.

She further alleges that non-disabled tenants are treated differently in that they are provided with clear accountings and explanations of charges.  (Id. at ¶ 143).  Plaintiff alleges that she has sought an accounting multiple times to no avail. (Id. at ¶¶ 51-53).  Plaintiff Berk also alleges that she "was charged late fees because she mailed her maintenance checks before the 10th of each month.  Still, the mail arrived late which was no fault of her own."  (ECF 7 at ¶ 94).  She further states that she has issues with writing letters, and requested to deliver her checks by hand, which other non-disabled tenants were permitted to do; however, she was denied this request initially.  (Id. at ¶¶ 93-96).  Although she ultimately was permitted to hand deliver her maintenance checks, in the interim she accrued over $400 in late fees.  (Id. at ¶ 97).

As defendant noted, Plaintiff does not tie this to any specific section of the Fair Housing Act.  This Court understands this Count as alleging both common law fraud and a violation of the FHA.  Although Plaintiff does not point to a specific section of the FHA in support of these allegation, Plaintiff Berk has alleged interference and failure to accommodate in violation of § 3617 of the FHA.  See Mitchell v. Walters, No. 10-1061, 2010 WL 3614210, at *5 (D.N.J. Sept. 8, 2010).

As for the allegation of common law fraud, Defendant Ritz does not set forth any argument as to common law fraud.  As such, this Count will proceed on behalf of Plaintiff Berk against the Ritz.  There are no allegations related to Plaintiff Kennedy in this Count, and as such to the extent these Counts are raised by Plaintiff Kennedy they will be dismissed against the Ritz.

### ii. Violations of the Fair Housing Act against both named defendants [Counts VIII and IX]

Plaintiffs allege that the Ritz "tolerated and/or facilitated" conduct from Defendant Maragoudakis as well as from agents of the Ritz.  Specifically, "Defendant tolerated and/or facilitated Mr. Maragoudakis's pattern of disabled abusive conduct, despite repeated specific requests to investigate Mr. Maragoudakis and intervene on behalf of Ms. Berk" and that "Defendant tolerated and/or facilitated its pattern of disabled abusive conduct, despite repeated specific requests to investigate its agents and policies and intervene on behalf of Ms. Berk."  (ECF 7 at ¶¶ 147, 150).

Defendant argues that "Plaintiffs similarly fail to specify *how* any alleged failure to investigate the conduct of [] Maragoudakis . . . constitutes discrimination on the basis of their alleged membership in a protected class, or how Defendant

Ritz is responsible for conduct of another defendant off premises." (ECF 24 at 5 (emphasis in original)).

Without the benefit of Plaintiffs pointing to any specific provision of the Fair Housing Act, this Court construes these counts as duplicative of Counts V and VI, which also assert violations of § 3617, and are therefore dismissible by the Court on those grounds. Mackachinis v. McCosar Mins., Inc., No. 12-2012, 2013 WL 1752472, at *3 (M.D. Pa. Apr. 23, 2013) ("ample authority supports this court's discretion to dismiss duplicative counts of a complaint. See, e.g., Brown & Brown, Inc. v. Cola, 745 F.Supp.2d 588, 626–27 (E.D. Pa. 2010) (dismissing a count where it was 'nothing more than duplicative' of other counts in a complaint); Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 834 (E.D. Pa. 2000) (dismissing a count that 'merely duplicates' another count)."). As such, Counts VIII and IX will be dismissed against both Defendants and any allegations set forth under these Counts will be considered under Counts V and VI.

### E. Negligent Infliction of Emotional Distress against the Ritz Carlton Condominium Association [Counts X and XI]

Plaintiff Berk asserts negligent infliction of emotional distress due to the Ritz charging fees for her service dog and emotional support cat, failing to investigate death threats against Plaintiff's service dog and emotional support cat, and

"[w]anting to evict a service dog and emotional support cat."
(ECF 7 at ¶¶ 157–160).  Plaintiff Berk states that "[t]he
Defendant's failure to investigate and intervene in response to
Mr. Maragoudakis's violent death threats toward Ms. Berk and her
service dog "Angelina Jolie" and emotional support cat "Gemini"
constitutes extreme and outrageous conduct and caused Ms. Berk
severe emotional distress."  (ECF 7 at ¶ 155).  Plaintiffs also
assert that the Ritz "has threatened to evict the Plaintiffs
[because of] the emotional support cat."  (ECF 7 at ¶ 81).
While Count X focuses on the alleged failure to intervene and
investigate death threats, Count XI focuses on the alleged
threats of eviction and fees related to the service and
emotional support animals.

First, this Court notes that there are no allegations in
the First Amended Complaint with respect to Plaintiff Kennedy
and negligent infliction of emotional distress.  Thus, his claim
for negligent infliction of emotional distress against Defendant
Ritz will be dismissed.

Claims for negligent infliction of emotional distress are
characterized as either direct claims or indirect claims.  In a
direct claim for negligent infliction of emotional distress "a
person who is the direct object of a tortfeasor's negligence
experiences severe emotional trauma as a result of the
tortfeasor's negligent act or omission."  Gendek v. Poblete, 654

A.2d 970, 972 (N.J. 1995).  In an indirect claim "a person, not otherwise a direct object of a tortfeasor's negligence, experiences severe emotional distress when another person suffers serious or fatal injuries as a result of that negligence."  Id.  This Court will first address Plaintiff Berk's direct claim and then address the indirect claim.

Plaintiff Berk alleges a direct claim of negligent infliction of emotional distress, stating that the Ritz's failure to investigate death threats against her caused her severe emotional distress.  Plaintiff also alleges that charging fees for her emotional support animals, and threatening eviction if those fees are not paid has caused her emotional distress. (ECF 7 at ¶¶ 157, 159, 160).

As to the direct negligent infliction of emotional distress claims, Defendant argues that there is no duty of care as "no landlord tenant relationship exists as Plaintiff Berk is a fee simple owner of her condominium unit."  (ECF 14-2 at 9).  In addition, the conduct alleged by the Plaintiff (overcharging, failure to investigate, and illegal policies towards service animals) simply does not rise to the level of severe or outrageous."  (Id. at 33).

In order to maintain a direct claim, "[t]he analysis of direct claims of negligent infliction of emotional distress 'involves traditional concepts of duty, breach and causation'

29

and 'determining defendant's negligence depends on whether defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability.'"  Sporn v. Ocean Colony Condo. Ass'n, 173 F. Supp. 2d 244, 254 (D.N.J. 2001) (quoting Williamson v. Waldman, 696 A.2d 14 (1997).).

In addressing whether Plaintiff Berk has sufficiently plead a direct claim, this Court must examine whether the Ritz owes a duty to Plaintiff.  "Whether defendants owed a duty of care to plaintiffs is a matter of law to be determined by a court." Goodman v. Shore Club Condo. Assoc., No. 17-2226, 2018 WL 4347382, at *5 (D.N.J. Sept. 10, 2018).  Defendant's assertion that there is no duty of care because there is no landlord-tenant relationship ignores the fact that there is a relationship between a condominium association and its residents.  New Jersey designates duties of a condominium association to its residents by statute.  N.J. Stat. Ann. § 46:8B-14.  The statutorily provided for duties include responsibility for maintenance, repair, replacements, cleaning, and sanitation of common areas; assessment and collection of funds for common expenses; "adoption, distribution, amendment and enforcement of rules governing the use and operation of the condominium"; maintenance of insurance against loss by fire or other casualties and against liability for personal injury or death; maintenance of accounting records as well as record of

receipt and expenditures; maintenance of an account for each unit setting forth shares of common expenses or other charges. This list is not exhaustive, as "[s]uch other duties . . . may be set forth in the master deed or bylaws."  N.J. Stat. Ann. § 46:8B-14(i).

While the Ritz could include rules governing interpersonal conflict between residents as part of its duty to amend and enforce rules governing the use and operation of the condominium, Plaintiffs have not pointed to any such rule. Plaintiffs point to sections of the Master Deed and the Associations Rules and Regulations that prohibit residents from engaging in obnoxious or offensive activities; however, while the sections Plaintiffs cite create a code of conduct for residents, the language does not impose a duty upon the Ritz to enforce this rule in a particular way.  As such, although there is a special relationship between Plaintiff Berk and the Ritz and the Ritz may accordingly have a duty of care, Plaintiff has not sufficiently demonstrated that the Ritz had a duty to intervene in another resident's behavior towards Plaintiff Berk.

Plaintiff's allegation that Defendant Ritz breached a duty to her in overcharging certain fees is supported by the duties set forth in the Condominium Act, as the Ritz is responsible for "[t]he assessment and collection of funds for common expenses and the payment thereof."  That said, assuming, without finding,

that Defendant Ritz had a duty not to overcharge Plaintiff, and breached that duty by overcharging her, Plaintiff has not allege sufficient facts to demonstrate that this breach resulted in severe emotional distress.  "Plaintiffs' 'claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae.'"  Raciti v. Rushmore Loan Mgmt. Servs., LLC, 412 F. Supp. 3d 462, 471 (D.N.J. 2019) (quoting Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 237, 87 A.3d 775 (App. Div. 2014), aff'd, 224 N.J. 584, 136 A.3d 108 (2016).").

Here, Plaintiff's allegations that she suffered emotional distress are conclusory.  She does not detail any physical or psychological symptoms that she suffered or any need for therapy or other medical care.  As such, she has not sufficiently plead direct negligent infliction of emotional distress.  See Raciti v. Rushmore Loan Mgmt. Servs., LLC, 412 F. Supp. 3d 462, 472 (D.N.J. 2019) ("the Complaint contains no allegations at all regarding Plaintiffs' alleged emotional distress. Therefore, Plaintiffs have failed to sufficiently allege that they suffered severe emotional distress").

Plaintiff Berk also alleges an indirect claim, alleging that the Ritz's failure to investigate death threats made against her service dog and emotional support cat caused her severe emotional distress.

32

With respect to her indirect negligent infliction of emotional distress claim, Defendant explains that pets cannot satisfy the close relationship requirement of an NIED claim. (ECF 14-2 at 26).  Defendant also asserts that Plaintiff does not allege serious injury or death caused to her cat.  (Id. at 29).

In order to maintain an indirect claim, Plaintiff must show that "(1) the death or serious physical injury of another [was] caused by defendant's negligence; (2) a marital or intimate familial relationship [existed] between plaintiff and the injured person; (3) [she had observed] the death or injury [of the victim] at the scene of the accident; and (4) [she had suffered] severe emotional distress."  Gendek v. Poblete, 654 A.2d 970, 973 (N.J. 1995) (quoting Portee v. Jaffee, 417 A.2d 521, 528 (N.J. 1980)) (alterations in original).

With respect to the indirect claim, it is settled law in New Jersey that indirect negligent infliction of emotional distress claims do not apply to harm done to animals or pets. McDougall v. Lamm, 48 A.3d 312, 326 (N.J. 2012) ("we decline plaintiff's request that we expand the class of individuals authorized to bring a Portee claim by extending it to individuals who have witnessed the traumatic death of a pet"). As such, Plaintiff Berk has not sufficiently plead an indirect

negligent infliction of emotional distress claim against the
Ritz and the same will be dismissed.

> ### F. "Negligent Infliction of Emotional Distress, FHA Service animal, and Emotional Support Animal violations" against Ritz Carlton Condominium Association [Count XI]

In this Count, Plaintiff sets forth allegations related to
her service dog and emotional support cat.  This Court has
addressed the negligent infliction of emotional distress aspect
of this Count in the discussion above.  Plaintiff also alleges a
Fair Housing Act violation related to her dog and cat.  Although
the allegations under this count focus on negligent infliction
of emotional distress, Plaintiffs complain of the failure to
accommodate throughout the Amended Complaint and Defendant Ritz
addresses the sufficiency of a failure to accommodate in the
context of this count.  Accordingly, the Court will construe
this as a failure to accommodate claim under the FHA.  Higgs v.
Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011), as
amended (Sept. 19, 2011) ("The obligation to liberally construe
a pro se litigant's pleadings is well-established."); Wallace v.
Fegan, 455 F. App'x 137, 139 (3d Cir. 2011) ("Pleadings and
other submissions by pro se litigants are subject to liberal
construction").

"A plaintiff may bring a claim under the FHA for unlawful
discriminatory housing practices under three legal theories:

disparate treatment, disparate impact and failure to reasonably accommodate." Sharpvisions, Inc. v. Borough of Plum, 475 F. Supp. 2d 514, 522 (W.D. Pa. 2007) (citing Lapid-Laurel v. Zoning Board of Adjustment of the Township of Scotch Plains, 284 F.3d 442, 448 (3d Cir. 2002)). Plaintiff appears to be alleging a failure to accommodate her use of an emotional support cat.

Defendant argues that "Plaintiff Berk alleges negligent infliction of emotional distress, purportedly based upon an FHA violation that Defendant Ritz failed to accommodate her disability by charging fees for her 'emotional support cat,' Gemini." (ECF 14-2 at 9). However, Defendant argues that "Plaintiff Berk fails to allege or show that she notified Defendant Ritz of a bona fide request to be exempt from any fees relating to her cat because it was an emotional support animal, never presented any documentation from a treating medical professional and did not request such an accommodation prior to the filing of the instant Complaint such that Defendant Ritz refused the request." (Id. at 10).

Defendant argues that Plaintiff has not demonstrated a failure to accommodate under the Fair Housing Act related to her emotional support animal because she never provided notice to the Ritz that her cat qualified as an emotional support animal and her allegations that the Ritz charged her $21,900 in fees

related to her cat are untrue as these costs were actually related to unpaid maintenance fees.  (Id. at 13).

If Defendant's narrative is correct, this would undermine Plaintiffs' failure to accommodate claim.  That said, for purposes of a motion to dismiss, this Court must accept all well-pleaded facts as true.  In the First Amended Complaint, Plaintiffs clearly allege that the Ritz "demands and accepts fees for the [emotional support] cat . . . and tells Jessica Berk that it does not matter that it is an emotional support animal."  (ECF 7 at ¶ 60).  Plaintiffs also allege the Ritz "has threatened to evict Plaintiffs for the emotional support cat." (Id. at ¶ 68).

Defendant asserts that after the First Amended Complaint was filed, on June 16, 2023, Plaintiffs finally provided the Ritz with documentation showing that their cat is an emotional support cat, and "[a]s a result of this recent development, Defendant Ritz will no longer list Plaintiff Berk on the list seeking fees in connection with the pet policy."  (ECF 24 at 7). Defendant states that this is therefore no longer an issue and should be dismissed.  (Id.).  This was raised for the first time in Defendant Ritz's Reply.

To establish a failure to provide reasonable accommodation in violation of the Fair Housing Act, Plaintiff must demonstrate that "i) that [s]he is suffering from a disability as defined

36

under 42 U.S.C. § 3602(h)(1); ii) that the Defendants knew or reasonably should have been expected to know of the disability; iii) that reasonable accommodation of [Plaintiff's] disability might be necessary to afford [her] an equal opportunity to use and enjoy his dwelling; and iv) that the Defendants refused to make a reasonable accommodation." Bell v. Tower Mgmt. Serv., L.P., No. 07-5305, 2008 WL 2783343, at *3 (D.N.J. July 15, 2008) (quoting United States v. Port Liberte Condo 1 Ass'n, Inc., No. 04-2783, 2006 WL 2792780, *5 (D.N.J. Sept. 27, 2006)).

Although these facts may be disputed, Plaintiff Berk alleged that she has a disability (ECF 7 at ¶ 9), that she provided the Ritz with a copy of her favorable social security determination and therefore the Ritz knew about her disability (Id. at ¶ 11), that despite the Ritz's awareness that her cat is an emotional support animal it "still demands and accepts fees for the cat" (ECF ¶ 60) and; that she is not given any opportunity to dispute this (ECF ¶ 62).  These allegations are sufficient to support a failure to accommodate claim at this phase on behalf of Plaintiff Berk at least for those fees which were charged and paid.  Although the First Amended Complaint alleges that Plaintiff Kennedy shares the emotional support cat and that he is disabled, there are no allegations stating that the Ritz knew he was disabled or that he requested an accommodation or even that he resides in the Ritz building.

Accordingly, this claim with be dismissed as it relates to Plaintiff Kennedy.

### G. Breach of Contract against Ritz Carlton Condominium Association [Count XII]

Plaintiffs allege that "Defendant's actions and failure to act, despite repeated specific requests to investigate Maragoudakis's conduct and intervene on behalf of Berk, breached Defendant's agreement with Berk, as described above, to ensure [her] quiet enjoyment of her home."  (ECF 7 at ¶ 163).

First, Defendant Ritz notes that Plaintiff Kennedy does not have standing with respect to a breach of contract claim, "as he is not a party to any of the contracts at issue."  (ECF 14-2 at 35).  Further, Defendant Ritz asserts that "Plaintiffs cannot maintain a breach of contract claim against Defendant Ritz." (Id.).  Specifically, Defendant Ritz states that "the provisions of the condominium's governing documents to which Plaintiffs cite do not obligate Defendant Ritz to 'investigate' or 'intervene' in incidents occurring off premises nor do the cited provisions create a liability for Defendant Ritz based upon intentional or independent tortious conduct of Defendant Maragoudakis and Plaintiffs' breach of contract claims cannot survive the within motion to dismiss."  (Id. at 10).  The referenced provisions include "section 23(b) of the Master Deed,

Section 25 of the Rules and Regulations, and Section 12 of the Rule and Regulations."  (ECF 14-2 at 35).

The First Amended Complaint cites these documents:

> The Association's Master Deed, Section 23(b) states that "[n]o immoral, improper, offensive or unlawful use shall be made of the Property nor any part thereof."  The Association's Rules and Regulations, Section 25 states that "[n]o obnoxious or offensive activities of any kind shall be carried on, in or upon the common elements or in any unit or shall anything be done therein either willfully or negligently, which may be or become an annoyance or nuisance to other residents or occupants of the Condominium."  The Association's Rules and Regulations, Section 12 states that "[t]he success of the Ritz Condominium Association depends upon the quality of the relationship between the Association, our employees, residents, and the general public. Residents should communicate with other residents and employees in a respectful, honest, and courteous matter. If there is a dispute between a resident and/or employee, the resident or the employee must speak to General Manager.  Each dispute will be handled on a case-by-case basis.  If the dispute is not settled, the matter can be taken to the Board by either the employee or the resident."

(ECF 7 at ¶ 117).

Nothing in these cited sections imposes a duty to intervene on behalf of the Condominium Association when there are issues between residents.  As such, the breach of contract claim against the Ritz will be dismissed.

### H. Intentional Infliction of Emotional Distress against both named Defendants [Count XIII and Count VX]

In Count XIII Plaintiff Berk alleges intentional infliction of emotional distress against defendant Maragoudakis as well as the Ritz, stating that "Mr. Maragoudakis's conduct, including the use of violent threats and disabled epithets, and treating her service animal was extreme and outrageous and done with the intent to cause severe emotional distress along with the building illegal policies towards service animals, overbilling, and other violations in this complaint constitute an Intentional Infliction of Emotional Distress." (ECF 7 at ¶ 166). In Count VX Plaintiff Berk alleges intentional infliction of emotional distress against the Ritz and "Doe Defendants," alleging that "[t]he Doe Defendants disclosed the photos with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to the disabled person, including Plaintiff, Jessica Berk. As a direct and proximate result of the Ritz Carlton Condominium Association's conduct, Plaintiff has suffered (and continues to suffer) severe emotional distress in an amount to be proven at trial. Pursuant to John Jane Doe Defendants, the Ritz Carlton Condomium [sic] Association is liable for injuries caused by their acts or omissions to the same extent as a private person." (ECF 7 at ¶ 180). She further claims that "[t]he acts of the Doe Defendants were committed within the course and scope of their employment,

and the RItz [sic] are liable for the Doe Defendants' negligent and wrongful conduct."  (Id. at ¶ 176).

Defendant argues that "Plaintiffs' complaint woefully fails to set forth facts to support a finding that (1) Defendant Ritz intended to produce any emotional distress; and (2) Defendant's conduct was severe and outrageous."  (ECF 14-2 at 31). Specifically, "the conduct alleged by the Plaintiff (over charging, failure to investigate, and illegal policies towards service animals) simply does not rise to the level of severe or outrageous."  (Id. at 32).  Defendant Ritz argues that the alleged conduct is not "extreme and outrageous" where "many of the alleged incidents happened to other people and off Ritz Property.  Accordingly, it is not 'outside the bounds of decency,' to decline to investigate an incident to which the Defendant has no duty to investigate."  (Id. at 33).  As for the fees, Defendant Ritz asserts that "Ms. Berk agreed to pay the pet fees when she moved in, and consistently paid for her 'service dog,' Angelina Jolie.  Plaintiff cannot suddenly argue that this practice is severe and outrageous because (1) it conforms with community guidelines; (2) she agreed to this practice; and (3) she has tolerated it, and paid in the past." (Id.).

In order to establish an intentional infliction of emotional distress claim:

> First, plaintiff must prove that defendant
> acted intentionally or recklessly.
> Defendant must intend "both to do the act
> and to produce emotional distress."  A
> defendant may also be liable when he "acts
> recklessly in deliberate disregard of a high
> degree of probability that emotional
> distress will follow."
>
> Second, plaintiff must prove that
> defendant's conduct was "extreme and
> outrageous." The conduct must be "so
> outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds
> of decency, and to be regarded as atrocious,
> and utterly intolerable in a civilized
> community."
>
> Third, plaintiff must prove defendant's
> conduct was a proximate cause of plaintiff's
> emotional distress.
>
> Fourth, "the emotional distress suffered by
> plaintiff must be so severe that no
> reasonable [person] could be expected to
> endure it."  When conduct is directed at
> plaintiff, she need not prove physical
> injury.  It is sufficient that the conduct
> produced emotional distress that is severe.

Ingraham v. Ortho-McNeil Pharmaceutical, 25 A.3d 1191, 1194-95,

(N.J. Super. Ct. App. Div. 2011) (quoting Buckley v. Trenton

Saving Fund Society, 111 N.J. 355, 544 A.2d 857 (1988))

(internal citations omitted).

For an IIED claim, "[t]he liability clearly does not extend

to mere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities."  49 Prospect St. Tenants

Ass'n v. Sheva Gardens, Inc., 547 A.2d 1134, 1145 (App. Div.

1988) (quoting Restatement, Torts (Second) § 46, cmt d).  Here

the Ritz is charged not with making threats, but failing to
intervene and stop threats.  Where allegations of threats are
insufficient to support an IIED claim, allegations of failure to
intervene to prevent threats are also insufficient.

As to the overcharging and threat of eviction, "[c]onduct
in connection with eviction may rise to the level of IIED in an
extreme case."  Peterson v. HVM LLC, No. 14-1137, 2016 WL
845144, at *12 (D.N.J. Mar. 3, 2016).  It is not an extreme case
here, where Plaintiff does not allege that she was evicted, but
merely threatened with eviction if she did not pay certain
charges.

The Intentional Infliction of Emotional Distress Counts
will be dismissed on behalf of both Plaintiffs against Defendant
Ritz.

### I. Invasion of Privacy against "Ritz Carlton Condominium Association Employees and the Does 1-20" [Count IVX]

Plaintiff Berk asserts an invasion of privacy claim,
stating that "[t]he John/Jane/Nonbiinary [sic] Doe Defendants
and General Manager Anne-Marie Randel took and publicly
disclosed photos of Jessica Berk's physical distress, both
personally and electronically, The transmittal of these photo(s)
by most was done to mock and belittle her for her disability
within the Ritz Carlton Condominium Association and to the
public."  (ECF 7 at ¶ 169).  "Taking photos of her in peril

without any law-enforcement purpose is offensive and objectionable to a reasonable person of ordinary sensibilities." (ECF 7 at ¶ 170).

The allegations in this Count are limited to Plaintiff Berk, and as such to the extent the Amended Complaint asserts a claim of this kind by Plaintiff Kennedy against Defendant Ritz it will be dismissed.

Defendant Ritz argues that "[b]ecause the manner in which the Defendant allegedly intruded upon was not private, Plaintiff Berk cannot establish a prima facie cause of action for any of the invasion of privacy torts."  (ECF 14-2 at 40).

New Jersey has adopted the definitions of invasion of privacy claims in the Second Restatement of Torts.  Tellado v. Time-Life Books, Inc., 643 F. Supp. 904, 907 (D.N.J. 1986) ("New Jersey law now treats each kind of invasion of privacy differently and has adopted the distinctions and definitions of the Second Restatement of Torts.").  "The Restatement of Torts lists the four areas of invasion of privacy as generally including (a) unreasonable intrusion, (b) appropriation of the other's name or likeness, (c) unreasonable publicity given to one's private life and (d) publicity that normally places the other in a false light before the public.  3 Restatement, Torts 2d, § 562A at 376 (1977)."  Id. at 907 (quoting Bisbee v. John C. Conover Agency, 452 A.2d 689 (N.J. Super. App. Div. 1982)).

44

The Restatement (Second) of Torts sets out the definition of the tort of unreasonable intrusion:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts, § 652B (1977).  Plaintiff Berk has not alleged that Defendant Ritz intruded upon the solitude or seclusion of Plaintiff where the photograph at issue depicts Plaintiff on the boardwalk, which is a public setting.  See Tellado, 643 F. Supp. at 907 (dismissing an unreasonable intrusion claim where "[t]he photograph that was published depicts plaintiff and other soldiers during a combat mission in Vietnam—a clearly public setting.").

For an appropriation of name or likeness claim, the Restatement explains that:

> One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.

Restatement (Second) of Torts, § 652C (1977).  Plaintiff Berk has not alleged that Defendant Ritz used her photograph for their own purpose and benefit, commercial or otherwise.  As such, Plaintiff Berk has not plead an appropriation of name or likeness claim.

45

For a publicity given to private life claim:

> One who gives publicity to a matter
> concerning the private life of another is
> subject to liability to the other for
> invasion of his privacy, if the matter
> publicized is of a kind that
>
> (a) would be highly offensive to a
> reasonable person, and
>
> (b) is not of legitimate concern to the
> public.

Restatement (Second) of Torts, § 652D (1977). "A fundamental element of this cause of action is that it involve the publication of an 'intimate detail' of an individual's life." Borton v. Unisys Corp., No. 90-4793, 1991 WL 915, at *10 (E.D. Pa. Jan. 4, 1991). Here, where the photograph at issue was taken in a public place, subsequent display of the photograph did not reveal a private aspect of Plaintiff's life. See id. ("The photograph was taken in a public place and in full view of other Unisys employees. It documented a public occurrence and its subsequent display did not reveal any private aspect of Borton's life. Therefore, Borton's claim for invasion of privacy for publicity given to private life will be dismissed.").

For a false light claim, the Restatement requires that:

> (a) the false light in which the other was
> placed would be highly offensive to a
> reasonable person, and
>
> (b) the actor had knowledge of and acted in
> reckless disregard as to the falsity of the

46

> publicized matter and the false light in
> which the other would be placed.

Restatement (Second) of Torts, § 652E (1977).  It is a necessary
element that "the matter publicized be untrue, although it is
not necessary for the matter to be defamatory." Cibenko v.
Worth Publishers, Inc., 510 F. Supp. 761, 766 (D.N.J. 1981).
Here, there are no allegations that any aspect of the photograph
is untrue or that Plaintiff Berk has been placed in a false
light.  Accordingly, Plaintiff Berk has not alleged a false
light invasion of privacy claim.

As Plaintiff Berk has not sufficiently plead any of the
invasion of privacy causes of action, this Count will be
dismissed against the Ritz and its employees.

### J. Res Judicata

In Defendant's Reply, it states in a throwaway comment that
"many of Plaintiffs' claims appear to relate back to events and
fees that were addressed by the Court in the 2019 lawsuit,[9] which
resolved via a settlement agreement, the terms of which abated

---

[9] Plaintiff Jessica Berk previously filed suit against the Ritz
Carlton Condominium Association on November 25, 2019 in Berk v.
Ritz Carlton Condominium Association, et al, 1:19-cv-20666-NLH-
MJS.

said fees." (ECF 24 at 5). This Court expresses its concern that there may be issues of res judicata.

The Supreme Court has explained that under certain circumstances it may be appropriate for a Court to raise res judicata sua sponte: "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised." Arizona v. California, 530 U.S. 392, 412, supplemented, 531 U.S. 1 (2000) (quoting United States v. Sioux Nation, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting) (citations omitted)).

Here, because the 2019 case settled, and as such the Court did not have an opportunity to delve into the facts and circumstances of the allegations substantively, the Court will not dismiss any claims based on res judicata sua sponte, especially where this would only apply to certain claims rather than the entire matter.

## V.   **LEGAL STANDARD FOR MOTION TO AMEND**

Federal Rule of Civil Procedure 15(a) governs motions to amend a complaint. Rule 15(a) provides that once a party has filed a responsive pleading to the complaint "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is to be freely granted unless there is a reason for denial,

"such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Arthur v. Maersk, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility.").

The futility of a proposed amended pleading is evaluated under the same standard of legal sufficiency as a motion to dismiss under Rule 12(b)(6). Travelers Indent. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## VI. DISCUSSION OF MOTION TO AMEND

### A. Untimely Reply

First, as noted above, Plaintiffs' Reply in support of their Motion to Amend was filed past the deadline. In conjunction with an extension granted to Defendant for its Opposition, this Court set the deadline for Plaintiffs' Reply for October 2, 2023. (ECF 30). On October 4, 2023, Plaintiffs filed a request for an extension of time to file their Reply.

(ECF 32).  Then on October 8, 2023, Plaintiffs filed their Reply
along with a motion titled Motion for Excusable Neglect with
Reply to Opposition to Amended Complaint.  (ECF 33).  In this
motion, Plaintiffs asked the Court to consider their untimely
Reply.

Pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), the
Court may extend a deadline "on motion made after the time has
expired if the party failed to act because of excusable
neglect."  "In evaluating whether 'excusable neglect' exists,
the Court must consider 'all relevant circumstances surrounding
the party's omission,' including: (1) the danger of prejudice;
(2) the length of the delay and its potential impact on judicial
proceedings; (3) the reason for the delay, including whether it
was within the reasonable control of the movant; and (4) whether
the movant acted in good faith."  Krauss v. IRIS USA, Inc., No.
17-778, 2019 WL 2268975, at *2 (E.D. Pa. May 24, 2019) (quoting
Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507
U.S. 380, 395 (1993)).  "Where a delay in adhering to a court-
ordered deadline is not long and causes little prejudice to the
opposing party, a court may opt to excuse the lateness."  In re
Cendant Corp. Prides Litig., 189 F.R.D. 321, 324 (D.N.J. 1999),
aff'd, 233 F.3d 188 (3d Cir. 2000).

First, this Court does not find there to be any risk of
prejudice to Defendants in considering the Reply brief, and

notes that Defendants did not respond or present any opposition to Plaintiffs' motion asking the Court to consider their untimely brief.  This consideration weights in favor of considering the brief.

The length of delay was minimal, as Plaintiffs sought an extension only two days after the filing deadline, and filed the Reply brief only six days after the deadline.  The length of delay has had no impact on the judicial proceedings, as the delay had no effect on this Court's timeline in issuing this opinion deciding the Motion to Amend, and the delay had no effect on Defendants' briefing schedule.  This consideration weights in favor of considering the brief.

Next, the reason that Plaintiffs present for their delay is that they were caring for Plaintiff Kennedy's 91 year old mother who had recently suffered injuries.  (ECF 32 at 1).  While the request was made on October 4, 2023, Plaintiffs allege that Plaintiff's Kennedy's mother was injured on September 8, 2023.  (Id.).  Thus, while this may provide an explanation for Plaintiffs' need for an extension of time to submit their Reply Brief, it does not explain the delay in requesting an extension.  This consideration weighs against considering the brief.

Finally, as to whether Plaintiffs acted in good faith in filing their delayed Reply, the Court notes that while litigants must be diligent in prosecuting their case, the Court has no

reason to believe that the delay was done for any improper purpose or to intentionally cause delay in the action.  This Court finds that Plaintiffs acted in good faith.  This factor weighs in favor of granting the untimely request for extension.

Overall, based on the considerations addressed above, the circumstances of this untimely request for an extension weigh in favor of granting the extension and thus considering the untimely Reply.

### B. Opposition

Defendant Ritz opposes the Motion to Amend, stating that "the allegations presented in Plaintiffs' proposed Second Amended Complaint are futile, fail to cure the deficiencies addressed by Defendant Ritz's Motion to Dismiss and continue to fail to state cognizable causes of action against Defendant Ritz." (ECF 31 at 7).  Beyond that, Defendant Ritz's opposition does not substantively discuss Plaintiffs' proposed additional parties or additional counts.  Rather, Defendant Ritz rehashes its arguments about the counts that are already included in the operative First Amended Complaint and explains why the minor alterations to those sections are futile.  Accordingly, Defendant Ritz's opposition does not guide this Court's analysis, and instead this Court will address whether amendment is appropriate based on the substance of the Amended Complaint and content of Plaintiffs' briefing.

### C. Proposed Amendments

Plaintiffs seek to file a second amended complaint in order to (1) add an additional plaintiff; (2) add three additional defendants; (3) add additional counts, including counts for retaliation for filing the instant action; and (4) make "corrections that will make the complaint more understandable." (ECF 26 at 5, 7).

First, this Court will address the proposed additional plaintiff, Robert Driscoll.  Next, it will address the proposed additional defendants, Gordon Pherribo, Nicole Accardi, and Allied Universal ("Allied").  Then, it will address the proposed additional counts.

### i. Amendment to Add Plaintiff Robert Driscoll

The only allegations in the Proposed Second Amended Complaint ("Proposed Complaint") that involve proposed additional Plaintiff Robert Driscoll are (1) that he is disabled, (ECF 26-2 at ¶¶ 3, 5) and (2) that he was present for an alleged home invasion in Plaintiff Berk's unit (Id. at ¶ 29). The Proposed Complaint includes the following substantive allegations involving proposed Plaintiff Robert Driscoll:

> 1. "The intruder terrified Jessica and Robert while possibly taking things of great value and money." (Id. at ¶ 29).
>
> 2. "Understandably, Robert called security when the intruder was in the apartment. Jessica spoke to security too. Both called

> for help by contract to at least call the
> police and save the footage." (Id. at ¶ 30).
>
> 3. "Jessica had had emotional distress and
> fear, so has Robert."  (Id. at ¶ 135).

These allegations are included in the Proposed Complaint in support of the claim that the security officers at the Ritz were negligent.  However, there are no allegations that demonstrate that Allied Security Company or the Ritz owed a duty to Driscoll.  As such, amendment to add Driscoll as a plaintiff based on the proposed allegations would be futile and thus does not provide rationale for permitting amendment.  Plaintiffs will not be permitted to amend their complaint to add Robert Driscoll as a plaintiff at this time.  If Robert Driscoll wishes to pursue his alleged claims, Robert Driscoll may file his own complaint and pay his own filing fee, and seek consolidation with this matter.

### ii.  Amendment to Add Defendants

Plaintiffs state that "Plaintiffs seek to add . . . three new Defendants — **Allied Universal, Gordon Pherribo, Jr.** (Chairman of the Board Ritz Condominium Association), **Nicole Accardi** (General Management of the Association Ritz Condominium) — who were significantly involved in planning and perpetrating the illegal plot/schemes and retaliation for filing federal complaints in violation of plaintiffs protected civil rights as a protected class as will be shown by overwhelming evidence,

54

basically the victimization of plaintiffs."  (ECF 26 at 1-2)
(emphasis in original).  Plaintiffs Proposed Complaint does not
include any substantive allegations about Gordon Pherribo, Jr.
or Nicole Accardi.  They are only included in the case caption
and in the description of the parties.  Because there are no
substantive allegations establishing their role in any of the
claims, amendment to add these defendants as alleged would be
futile.  Plaintiffs will not be permitted to amend the complaint
to include these two individual defendants without additional
allegations tying these Defendants to Plaintiffs' claims.  As
for proposed defendant Allied, there are substantive allegations
against this entity as addressed in the discussion of the
proposed additional counts below.

### iii. Amendment to Add Counts for Violation of 42 U.S.C. 1985(2) and (3)

In the Proposed Complaint, Plaintiffs allege that Defendant
Ritz, Defendant Maragoudakis, and prospective Defendant Allied
conspired "to deter Plaintiffs and others from appearing or
testifying in federal court" related to this case, and "to
retaliate against them for so appearing or testifying" in
violation of 42 U.S.C. § 1985.  (ECF 26-2 at ¶ 227).
Specifically, "Civil Rights Act of 1871, 42 U.S.C. 1985(2) and
(3), occurred when defendants failed to cooperate with the
Atlantic City Police Department for plaintiff's home invasion

which is pursuant to a conspiracy to deter them and others from appearing or testifying in federal court or to retaliate against them for so appearing or testifying." (ECF 26-2 at ¶ 152).

As a threshold matter, "[t]o constitute a conspiracy, there must be a 'meeting of the minds.'" Callaway v. Small, 576 F. Supp. 3d 232, 249 (D.N.J. 2021) (citation omitted). In order to establish a meeting of the minds, "direct evidence of an express agreement is not required." Szemple v. Rutgers, No. 10-05445, 2016 WL 1228842, at *7 (D.N.J. Mar. 29, 2016). Rather, "a § 1985 conspiracy may also be proved through circumstantial evidence, and a claim may be maintained where the jury could infer from the circumstances that the Defendants had a 'meeting of the minds.'" Id.

Plaintiffs have not alleged any facts in support of a conspiracy. All allegations of a conspiracy in the proposed amended complaint are merely legal conclusions, without any factual support. (See, e.g., ECF 26-2 at ¶¶ 152, 227, 230). Thus, Plaintiffs have not established the threshold requirement in demonstrating a conspiracy in violations of § 1985.

Section 1985 consists of three subsections dealing with various conspiracies to interfere with civil rights. Plaintiffs allege violations under two subsections, which this Court will address in turn.

"To establish a claim under § 1985(2), a plaintiff must allege one of the statute's two bases for recovery: 1) a conspiracy to 'deter by force, intimidation or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein ...'; or 2) a conspiracy with the purpose of 'impeding, hindering, or obstructing, or defeating in any manner, the due course of any justice in any State or Territory, with intent to deny any citizen the equal protection of the laws.' 42 U.S.C. § 1985(2)." Richardson v. Oriolo, No. 16-135, 2022 WL 4131968, at *15 (D.N.J. Sept. 12, 2022), aff'd, No. 22-2918, 2023 WL 2597590 (3d Cir. Mar. 22, 2023).

In the Proposed Complaint, Plaintiffs describe an alleged home invasion that occurred on August 7, 2023.  (ECF 26-2 at ¶¶ 17-31).  Plaintiffs allege that an unknown "criminal actor . . . cruised inside the Ritz," got "past the security guard with ease, past the cameras to do a home invasion on the Plaintiffs." (ECF 26-2 at ¶ 17).  Plaintiffs allege that the temporal proximity between Plaintiff Berk's "home invasion" and her filing a "rather good" opposition brief demonstrates that the alleged home invasion was part of a conspiracy to deter Plaintiffs from proceeding with this case.  (Id. at ¶ 148). Plaintiffs allege the home invasion occurred on August 7, 2023

(Id. at ¶ 127), and Plaintiffs filed their Opposition to the Motion to Dismiss on August 7, 2023 (ECF 19).

However, while temporal proximity may be considered, it is not necessarily determinative.  Here, there is no indication that there was any connection between the alleged home invasion or the response to the invasion and Plaintiffs' case.  First, the alleged intruder is not involved in this action.  Second, the security company, Allied, that Plaintiffs assert did not appropriately respond was not a defendant at the time of the alleged invasion and Opposition Brief filing.  Allied was not involved in this action in any form until the filing of Plaintiffs' Motion to Amend on August 28, 2023.  (ECF 26).  As for Defendant Ritz, there are no facts alleged to support a finding that Defendant Ritz instructed Allied to respond to Plaintiffs' request for assistance related to a home invasion in any particular way.

Subsection (3) provides a remedy, generally, if two or more persons conspire or go on the premises of another, "for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  To state a claim under § 1985(3), a plaintiff must allege, "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

58

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks and citations omitted).  With respect to the second element, "a claimant must allege some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a claim." Id. at 135 (emphasis in original) (internal quotation marks and citation omitted).

There are no allegations that anyone entered Plaintiffs' property other than an unnamed alleged home invader.  There are no facts alleged that demonstrate that this alleged invader conspired with the Ritz or Allied before entering her unit. Accordingly, Plaintiffs have not sufficiently alleged that any defendant or prospective defendant entered her premises in violation of § 1985(3).

From the facts alleged in the Proposed Complaint, Plaintiffs have not sufficiently alleged a claim under § 1985. As such, this proposed additional count does not provide a basis for granting the Motion to Amend as amendment to include this claim would be futile.

### iv. Amendment to Add Count for Negligent Security

To sustain a negligence claim, "a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'"   Townsend v. Pierre, 110 A.3d 52, 61 (N.J. 2015) (quoting Polzo v. Cty. of Essex, 960 A.2d 375, 384 (N.J. 2008) (discussing a negligent security claim)).  For a negligent security claim, "[t]he issue whether a defendant owes a legal duty is generally a question of law for the court to decide."   Clohesy v. Food Circus Supermarkets, Inc., 694 A.2d 1017, 1020 (N.J. 1997) (alteration in original).

"Whether a duty exists depends upon an evaluation of a number of factors including '[t]he nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interest of, and the relationships between or among the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.'"   Amentler v. 69 Main St., LLC, No. 08-0351, 2011 WL 1362594, at *4 (D.N.J. Apr. 11, 2011) (citations omitted).  Although foreseeability is not dispositive, it is a crucial factor in determining if a duty exists.   Id. (citations omitted).  "In the context of determining whether a duty of care exists, foreseeability refers to 'the knowledge of the risk of injury to be apprehended.  The risk reasonably to be perceived

60

defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.'" Id. (citations omitted). "Foreseeability should be evaluated according to the totality of the circumstances, and take into consideration a history of criminal activity at the location of the incident giving rise to the claim." Ludwiczak v. Showboat Atl. City Operating Co., LLC, No. A-5189-09T1, 2011 WL 2370744, at *5 (N.J. Super. Ct. App. Div. June 3, 2011).

First, Plaintiffs allege negligent security related to an alleged home invasion: "on August 7, 2023, when a criminal actor decided that he wanted to rob someone, he cruised inside the Ritz until he found his targets. He had gone past the security guard with ease, past the cameras to do a home invasion on the Plaintiffs." (ECF 26-2 at ¶ 127). Plaintiff provided a purported transcript of her conversation with Allied Universal Security in which the security guard advises that the individual did not enter the building from outside, but instead is a resident of the building that got confused and accidentally entered Plaintiff Berk's residence that was left unlocked. (Id. at ¶ 131). Plaintiff Berk reports her disbelief at this interpretation of events, stating that she had had a conversation with the person in the elevator and she believes he

followed her.  (Id.).  Accordingly, Plaintiff Berk states that "the defendants had ***actual*** knowledge of a dangerous condition in real time, while they made it their mission to 'watch' all of Jessica's moves all the time but consciously chose not to take steps to address that dangerous condition, and that it specifically contributed to this home invasion and theft of a disabled protected person's home."  (ECF 26-2 at ¶ 133 (emphasis in original)).

Plaintiffs have not established that the alleged home invasion was foreseeable.  Plaintiffs only explanation for why Allied should have anticipated the home invasion is that Plaintiff Berk has previously been cited for issues in the Ritz, for example she was fined for not wearing shoes in a public area.  (Id. at ¶¶ 119, 127, 137, 143).  Thus, Plaintiffs aver that Allied is watching video surveillance footage at all times, and therefore should have seen the alleged home invader.   (Id. at ¶ 137).  This is not sufficient to establish that there was a foreseeable risk of injury as it does not demonstrate that Allied was aware of any particular risk of a home invasion. Moreover, Plaintiff Berk admits that the door to her unit was unlocked at the time the alleged home invader followed her into her unit.  (Id. at ¶ 131).  Finally, Plaintiffs' core complaints are about Allied's conduct following the alleged home invasion.  (Id. at ¶ 42–43, 130).  Accordingly, there is a causation issue,

as even if Allied did have a duty to report this incident to the police or provide police with a surveillance video, Plaintiffs only requested these actions after the home invasion. Accordingly, any alleged damages from the home invasion were not proximately caused by Allied's reported failures.

Plaintiffs also point to other issues they attribute to Allied's negligent security stating that: "Despite having cameras everywhere Jessica's shillelagh was never returned (stolen) after she left her first property manager's office: Items were stolen from her wheelchair in the lobby, and the hall of her apartment; drinks were poured on her property by other tenants, harassment for disability has taken place by Allied employees; mail was not given and other tenants did the same some who made death treats [sic] to her service dog 'Angelina Jolie' and emotional support cat 'Gemini' and much more. Allied did nothing. Defendants did not allow this to happen to anyone else." (ECF 26-2 at ¶ 119).

Plaintiffs do not include any allegations as to how Allied should have been aware of any of these incidents in order to prevent them. Plaintiff Berk does not provide any facts demonstrating that her shillelagh or wheel chair were under the control or responsibility of Allied. She does not provide any explanation as to how Allied should have known that a tenant,

who is permitted to be in the building, would pour drinks on her property.

Overall, Plaintiffs have not included any allegations demonstrating that the injuries to them were foreseeable so as to create a duty on behalf of Allied.  Accordingly, amendment to include this claim would be futile.

### v. Amendment to Add Counts for Civil Rights Retaliation

In the proposed amended complaint Plaintiffs set forth three instances of alleged retaliation.  First, Plaintiffs allege that they sent a "preservation letter" to Allied, and did not receive any documents or information in response, which they allege is retaliation for filing this case.  (ECF 26-2 at ¶ 145) ("Defendant Allied was also given a preservation letter, nothing.  This is retaliation did not provide or request its employee to provide information about the crime to the authorizes in retaliation for filing a federal the same ADA complaint for which they falsely claimed Jessica was not disabled.").  Second, Plaintiffs allege that Allied failed to provide the Atlantic City Police Department with a video of the alleged home invasion in retaliation for this action.  (ECF 26-2 at ¶ 153) ("jury could conclude that the Defendants had a willful and malicious failure to guard and tell the police of what happened, provide them with the video needed to find the

criminal (a duty that the defendants had to plaintiffs by
contact law and premise law but did not do and it is also
considered retaliation. (4) a jury can reasonably conclude that
charging Jessica $20 instead of providing the video to the
Atlantic City Police is in retaliation for their new filing a
federal complaint and testifying to that end-the same goes for
all Operators").  Third, Plaintiffs allege that Defendant Ritz
advised Defendant Maragoudakis of this lawsuit before he was
served in hopes that he would retaliate.  (ECF 26-2 at ¶ 160)
("It is believed that STANLEY MARAGOUDAKIS was informed by all
of the Defendants in the hopes and expectation of which directly
involves all the Defendants in the actions of this bad actor in
the pursuit and concealment of fraud and theft deciet [sic] in a
plot/scheme to take Jessica's home.").

     The Fair Housing Act "prohibits retaliation, making it
'unlawful to coerce, intimidate, threaten, or interfere with any
person in the exercise or enjoyment [of], or on account of his
having exercised or enjoyed, or on account of his having aided
or encouraged any other person in the exercise of enjoyment of,
any right granted or protected by [ ] 42 U.S.C. § 3603, 3604,
3605, or 3606.' 42 U.S.C. § 3617." Livingstone v. Hugo Boss
Store, Atl. City, NJ, No. 21-01971, 2021 WL 3910149, at *5
(D.N.J. Sept. 1, 2021), appeal dismissed sub nom. Livingstone v.
Hugo Boss Store Atl. City, No. 21-2757, 2022 WL 845249 (3d Cir.

65

Mar. 2, 2022).  "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action."  Butler v. Sundo Cap., LLC, 559 F. Supp. 3d 452, 460 (W.D. Pa. 2021) (quoting Lloyd v. Presby's Inspired Life, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017)).

Filing a complaint and seeking to enforce the provisions of the Fair Housing Act constitutes engaging in a protected activity.  See 24 C.F.R. § 100.400 (prohibiting "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act."  Thus, Plaintiffs have plead the first element.  Plaintiffs' claim that Allied refused to provide information requested in a preservation letter does not constitute an adverse action.  The purpose of a preservation letter is to advise a party or prospective party of litigation so that any relevant information or documents are maintained and not disposed of.  This is distinct from a request for production of documents, which occurs at the discovery phase of litigation. This case is not yet at the discovery phase.  Thus, any failure to produce documents at this phase does not demonstrate an adverse action.  In addition, advising a defendant of active litigation against him does not constitute an adverse action.

66

It is a requirement to proceed with litigation against a party that that party is notified of the litigation.  While it is the Plaintiffs' obligation to officially serve each defendant, one defendant advising another of pending litigation does not constitute an adverse action.

Plaintiffs' allegation that Allied refused to provide the Atlantic City Police department with video surveillance of a home invasion could constitute an adverse action.  That said, the Proposed Complaint is missing key information on this point. Plaintiffs have not alleged that the Police Department requested this video surveillance.  All that is alleged is that Allied did not, on their own, make a police report on Plaintiffs' behalf and conjunctively provide the video to the police.

Moreover, even if this were an adverse action, Plaintiffs have not alleged any facts supporting their conclusion that this failure bears any relation to this lawsuit.  This Court further notes that Allied was not even a party or proposed party at the time of the home invasion or the few weeks after.  The alleged home invasion occurred on August 7, 2023 and the Motion to Amend to add Allied as a defendant was not filed until August 28, 2023.  Thus, a causal connection between Allied's implication in this lawsuit and the alleged failure to provide surveillance video to the police is lacking.

As Plaintiffs have not sufficiently plead the elements of a retaliation claim under the Fair Housing Act, amendment to include this count would be futile.

### vi. Amendment to Add Counts for Intentional Infliction of Emotional Distress

Plaintiffs seek to add an additional count for Intentional Infliction of Emotional Distress against Allied, stating that "it was intentional Emotional Distress because the Plaintiffs feel fear for their safety despite a multimillion-dollar security contract." (ECF 26-2 at ¶ 153).

Plaintiffs have not sufficiently plead the elements of an intentional infliction of emotional distress claim.  First, Plaintiffs have not demonstrated that Allied acted intentionally or recklessly to produce emotional distress.  There is no indication in the allegations that Allied engaged in any action with this purpose.  Second, Plaintiffs have not alleged that Allied engaged in conduct that was extreme or outrageous. Plaintiffs include an alleged transcript of the conversation with the Allied security officer in which the officer states that they reviewed video footage and investigated the issue. While Plaintiffs were not satisfied with the conclusion that Allied drew in that conversation, it does not demonstrate conduct that is severe and outrageous.

Third, Plaintiffs allege that they experienced emotional distress based on the alleged home invasion; however, their complaints about Allied followed the home invasion.  Plaintiffs assert that Allied failed to appropriately respond in the aftermath, and state that Allied should have coordinated with police.  These acts did not cause the emotional distress, and as such Plaintiffs have has not sufficiently plead proximate cause.

As Plaintiffs have not sufficiently plead these core elements of an intentional infliction of emotional distress claim against Allied, amendment to include this count would be futile.

### vii. Amendment to Add Counts for "interference under 24 CFR § 100.400

Plaintiffs allege that "Allied security did not press the button to let her in even though it is illegal for anyone to deny a person access to your property."  (ECF 26-2 at ¶ 6).  As this Court expressed above, the allegation that a defendant refused to allow Plaintiff Berk into the building when her disability prevented her from gaining her usual entry may support an interference claim.  In addressing the Ritz's motion to dismiss, this Court stated that it will permit the interference claim to proceed.  Plaintiff has alleged here that employees of Allied are the staff at the Ritz who specifically refused to grant her entry.  (Id.).  Accordingly, it would not

be futile to allow Plaintiff Berk to include Allied in her interference claims.  Plaintiff Berk will be permitted to file a second amended complaint for the purpose of adding Allied as a defendant in her interference claim under 42 U.S.C. § 3617.

> ### viii.  Amendment to Add Counts for "N.J.S.A. 2C:29-3 and other laws such as the New Jersey Law Against Discrimination

N.J.S.A. 2C:29-3 is a criminal statute.  A Plaintiff in a civil action cannot assert a claim premised on a criminal statute.  As such, Plaintiffs cannot support a claim under N.J.S.A. 2C:29-3, and therefore amendment to add this claim would be futile.

The only allegation related to the NJLAD is as follows: "Apart from the above all the Defendants discriminated against the plaintiff as protected race, sexual orientation, and race in violation of FHA and NJ LAD among others highlighted in this complaint."  (ECF 26-2 at ¶ 157).  This is conclusory and does not provide sufficient clarity or notice to the Defendants as to what facts Plaintiffs assert to establish an NJLAD claim or claims.  As such, amendment to add this claim as written would be futile.

> ### ix.  Amendment for Civil Rights Claims

For purposes of adjudicating Plaintiffs' Motion to Amend, this Court has examined whether to permit the Proposed Amended Complaint attached to the Motion to Amend to be filed as

drafted.  However, this Court has determined that the majority of the proposed amendments would be futile, with the exception of adding Allied as a defendant.

That said, Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment-irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  Thus, Plaintiffs will be permitted to file an Amended Complaint in order to reallege the dismissed civil rights claims above with additional alleged facts to support a claim, and allege any related additional civil rights claims while heeding this Court's analysis above of the futility of the addition of certain proposed counts as currently drafted.

## VII. CONCLUSION

For the reasons expressed above, Defendant's Motion to Dismiss the complaint will be granted in part and denied in part; Plaintiffs' Motion to Amend will be granted in part and denied in part; and Plaintiffs' Motion to Consider Untimely Brief will be granted.

The following counts will be dismissed: all counts raised on behalf of Plaintiff Kennedy against the Ritz as well as the following counts raised on behalf of Plaintiff Berk against the

Ritz - Counts I and II for violations of 42 U.S.C. § 1981; Counts III and IV for violations of 42 U.S.C. § 1982; Counts VIII and IX for violations of the Fair Housing Act; Count X for Negligent Infliction of Emotional Distress and Count XI to the extent it asserts a claim for Negligent Infliction of Emotional Distress; Count XII for Breach of Contract; Counts XIII and VX for Intentional Infliction of Emotional Distress; and Count IVX for Invasion of Privacy.

The following counts will be permitted to proceed against the Ritz on behalf of Plaintiff Berk: Counts V and VI for violations of 42 U.S.C. § 3617; Count VII for common law fraud and violation of the FHA; and Count XI to the extent Plaintiff asserts a failure to accommodate under the FHA.

The Motion to Amend will be granted for the limited purpose of adding Allied Universal as a defendant as it relates to Plaintiff Berk's interference claim under § 3617 of the FHA; however, Plaintiffs are also permitted to include in their amended complaint allegations to cure the deficiencies noted in the analysis of the motion to dismiss above and are permitted to include any additional related civil rights claims.  Plaintiffs

will be ordered to file their amended complaint within thirty
(30) days of this Court's Opinion and Order.

Further, as noted above, in order to proceed in this
action, Plaintiff Kennedy must provide the Court with his
current address and must pay his own filing fee.

An appropriate order will be entered.


Date: January 22, 2024                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.